SPITZER v. BROWN.

1. CHATTEL MORTGAGES—FUTURE ADVANCES—PURPOSE OF STATUTE. Purpose of statute pertaining to chattel mortgages covering future advances was not to eliminate mortgages as to such items but to limit the security to a specific amount (3 Comp. Laws 1929, § 13424, as amended by Act No. 129, Pub. Acts 1935).

2. SAME—CONTINUING SECURITY FOR FUTURE ADVANCES—STATUTES. Provision of chattel mortgage statute pertaining to future advances does not indicate that mortgage given as continuing

security for a certain amount can apply only to the original loan rather than a balance due at any given time from a series of loans and payments (3 Comp. Laws 1929, § 13424, as amended by Act No. 129, Pub. Acts 1935).

3. SAME—FUTURE ADVANCES—LIMIT OF SECURITY.

Duly recorded chattel mortgage covering future advances was void only as to amounts beyond sum stated therein but not as to all loans merely because made later in time than the original loan (3 Comp. Laws 1929, § 13424, as amended by Act No. 129, Pub. Acts 1935).

4. CONSTITUTIONAL LAW—CONTRACTS—REMEDY—IMPAIRMENT OF OBLIGATION.

There is such a distinction between the obligation of a contract and the remedy afforded by the legislature to enforce such obligation that the remedy may be modified without impairing the obligation.

5. SAME—IMPAIRMENT OF OBLIGATION OF CONTRACT.

The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced and whatever legislation lessens the efficacy of these means, postpones or retards the enforcement of the contract, weakens the obligation to that extent.

6. CHATTEL MORTGAGES—PLACE OF SALE—STATUTES—IMPAIRMENT OF OBLIGATION OF CONTRACT.

The right to have property covered by a chattel mortgage sold in the place agreed upon in the mortgage is a substantial right and a statute which permits a sale elsewhere limits the rights of a mortgagee so as to render statute unconstitutional as impairing the obligation of contract in so far as it applies to contracts executed before the act became effective (Act No. 290, §§ 4, 9, Pub. Acts 1939).

7. SAME—FORECLOSURE SALE—STATUTE PERMITTING SALE ELSEWHERE THAN AGREED ON.

Foreclosure sale under chattel mortgage executed before effective date of statute permitting sale of goods covered by mortgage elsewhere than as agreed in the mortgage, not being affected by such act, was valid where held without compliance with provisions thereof, since the change involved was the change of a substantial right and more than a change in remedy (Act No. 290, §§ 4, 9, Pub. Acts 1939).

8. APPEAL AND ERROR—REMAND—CONSIDERATION FOR BILL OF SALE.
Where bill of sale that had been executed by chattel mortgagee to chattel mortgagor failed to mention the actual consideration whereas a preceding option to purchase mentioned two different sums, remand of suit by plaintiffs, judgment creditors seeking to set aside chattel mortgage foreclosure sale, is made for purpose of determining actual consideration received for bill of sale where issue does not appear to have been raised before trial court.

9. CHATTEL MORTGAGES—AFTER-ACQUIRED PROPERTY—FORECLOSURE —JUDGMENT CREDITORS.
Die, press, and other fixtures purchased and paid for by chattel mortgagor and found by trial judge to have been sold to chattel mortgagee by sheriff at foreclosure of chattel mortgage but not mentioned in his bill of sale *held*, not shown to have been assets subject to execution by judgment creditors of the mortgagor, where chattel mortgage clearly applies to after-acquired property.

10. FRAUDULENT CONVEYANCES—INTENT—QUESTION OF FACT.
Fraudulent intent is a question of fact and not one of law (3 Comp. Laws 1929, § 13437).

11. APPEAL AND ERROR—FINDING OF FACT—FRAUD—CHATTEL MORTGAGES—JUDGMENT CREDITORS.
Finding of fact by trial court that no fraud or conspiracy had been practiced as to judgment creditors of chattel mortgagor in latter's conveyance of his assets to his mortgagee, being sustained by evidence, is not reversed by Supreme Court on appeal (3 Comp. Laws 1929, § 13437).

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted April 7, 1943. (Docket No. 13, Calendar No. 42,151.) Decided May 18, 1943.

Bill by Nathan Spitzer and others, copartners doing business as Penn Neckwear Company, against Otto M. Brown and others to have a chattel mortgage decreed satisfied, to determine the ownership of personal property, and for a receiver. Bill dismissed. Plaintiffs appeal. Modified and affirmed.

*Stanley S. Krause,* for plaintiffs.

*Paul J. Wieselberg,* for defendants.

Sharpe, J. This is a suit in chancery to set aside a chattel mortgage foreclosure sale and for a decree declaring the chattel mortgage fully paid and discharged.

In February, 1938, Otto M. Brown, Anna Salzberg and Abraham Salzberg purchased the business of the Ezeon Tie Company. The Salzbergs paid $3,000 for the business; and Brown gave to the Salzbergs his promissory note in the sum of $1,500 for his share in the business. Partnership papers were drawn up between Brown and Anna Salzberg. In December, 1938, the partnership was indebted to the Artistic Neckwear Company in the sum of $2,775.32.

On December 19, 1938, Anna Salzberg entered into an agreement with Brown whereby Brown agreed to purchase the interest of Anna Salzberg and dissolve the partnership. This agreement to purchase was completed in February, 1939, the mentioned consideration being the sum of $4,500, payable in cash and a chattel mortgage in the amount of $2,600 covering all of the assets of the business. This mortgage was properly recorded together with the required notice of the partnership dissolution. The chattel mortgage contained the following provision:

"Witnesseth, that the said party of the first part (Brown) for and in consideration of the sum of $2,600, to him in hand paid by said party of the second part (Anna Salzberg) and for the purpose of securing said sum and for any future sums for which said party of the first part may at any time hereafter become indebted to the said party of the second part, does hereby grant, bargain, sell and mortgage to said party of the second part, the following de-

scribed goods, chattels, and personal property, to-wit."

Thereafter, Brown as the sole owner of the Ezeon Tie Company purchased merchandise on open account from Penn Neckwear Company, plaintiffs herein, during the year 1939 and a part of 1940. Action was brought against Brown as sole owner of the Ezeon Tie Company and on October 5, 1940, a default judgment was taken in the sum of $1,992.28 and costs. Later a writ of execution was issued to satisfy the judgment and returned unsatisfied due to the fact that on September 21, 1940, all of the assets of the Ezeon Tie Company belonging to Brown had been foreclosed under the chattel mortgage held by Anna Salzberg and conveyed to Anna Salzberg by sheriff's bill of sale on the same day. In October, 1940, a corporation using the name Ezeon Tie Company was formed in Detroit by the Salzbergs with Brown as an employee. The assets of Brown purchased at the sheriff's sale, together with other assets, were transferred to the corporation.

Plaintiffs, as judgment creditors of Brown, filed their bill of complaint on January 9, 1941, and alleged that the chattel mortgage from Brown to Anna Salzberg had been fully paid and was allowed to continue in effect in fraud of creditors of Brown; that by agreement between Brown and Anna Salzberg the chattel mortgage was foreclosed and the assets of Brown transferred with intent to defraud creditors; and that by reason of the transfer Brown became insolvent.

Evidence was introduced at the trial of said cause to the effect that the past indebtedness of $2,600 mentioned in the chattel mortgage had been paid in full on February 27, 1940; and from the time of the execution of the chattel mortgage, February 24, 1939, until sometime in April, 1940, Brown had become

indebted to the Artistic Neckwear Company for merchandise delivered on open account in the sum of $2,588.95.

The trial court dismissed plaintiffs' bill of complaint and in an opinion found as a fact that there was no fraud or conspiracy committed by defendants.

Plaintiffs appeal and contend that the statute in force when the chattel mortgage was executed, 3 Comp. Laws 1929, § 13424, as amended by Act No. 18, Pub. Acts 1934 (1st Ex. Sess.), and Act No. 129, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 13424, Stat. Ann. § 26.929), providing that every mortgage "covering future advances shall be absolutely void * * * beyond the sum stated therein" makes this chattel mortgage void because there was no sum stated as to future advances and because the original debt had been paid; that if the chattel mortgage is valid, the sale thereunder is void because made in violation of Act No. 290, §§ 4, 9, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 13509-4, 13509-9, Stat. Ann. 1942 Cum. Supp. §§ 26.977[4], 26.977[9]); that the transfer of the new die and press, 75 display fixtures, and the stock reel was fraudulent as to creditors; and that the overpayment by Brown of $625 for the purchase of the partnership business from Anna Salzberg is an asset belonging to Brown subject to recovery by plaintiffs as judgment creditors.

An analysis of the wording of the above statute clearly indicates that its purpose was not to eliminate mortgages for future advances, but to limit the security to a specific amount. There is nothing in the statute indicating that when a mortgage is given as "continuing security" for a certain amount it can apply only to the original loan rather than a balance due at any given time from a series of loans

and payments. In our opinion the chattel mortgage was continuing security up to a maximum of $2,600 and was not voided by the statute. The act in question voids a mortgage "beyond the sum stated therein." It does not void it as to all loans made later in time than the original loan. Under our construction of the act, there was a right to foreclose the chattel mortgage to the extent of $2,600.

Plaintiffs urge that the foreclosure sale was invalid and contend that on September 20, 1940, the Salzbergs contacted Brown and by agreement between the parties arranged for the voluntary foreclosure of the chattel mortgage; and that on the following day, the sheriff, without the posting of any notices of sale, executed his mortgage foreclosure bill of sale contrary to Act No. 290, § 4, Pub. Acts 1939. This act provides:

"SEC. 4. If the mortgagor does not redeem the goods within 10 days after the mortgagee has taken possession thereof and the mortgagor has paid at least 50 per centum of the original debt secured by the mortgage by the time of the taking of possession of such goods, the mortgagee shall sell such goods at public auction, either in the county in which they were situated at the time of taking possession thereof or in the county in which either the mortgagor or mortgagee resides or has his place of business. The sale shall be held not less than 10 days nor more than 30 days after the taking of possession by the mortgagee. *　*　*

"SEC. 9. No act or agreement of the mortgagor before or at the time of executing the mortgage or any agreement or statement of the mortgagor contained in such mortgage, or statement by the mortgagor at the time of, or prior to the taking of possession of such goods by the mortgagee shall constitute a valid waiver of the provisions of this act except

that the mortgagor at the time of the taking of possession by the mortgagee or at any time thereafter by an instrument in writing, signed by him, may waive his right to a sale of the goods, which instrument, if accepted by the mortgagee, shall discharge the mortgagor of all obligation under the terms of said mortgage."

It is urged by defendants that the above act is not applicable as the chattel mortgage was executed and recorded before Act No. 290, Pub. Acts 1939, became effective, and the giving effect to it would result in the impairment of the obligation of a contract.

In *Sturges* v. *Crowninshield,* 4 Wheat. (17 U. S.) 122, 200 (4 L. Ed. 529), it was said:

"The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."

The chattel mortgage provided that the mortgagee, upon default, may take possession of the property and sell it at the place of its location or remove it to any other place within the State of Michigan and sell it either at private or public sale without notice to the mortgagor.

The above act requires the mortgagee to wait 10 days after taking possession of the mortgaged property before a sale may be had and the mortgagor is given a right of redemption during this period. The act also provides that if 50 per cent. of the original debt has been paid the right of a private sale is lost and a public sale required.

" 'The obligation of a contract, in the constitutional sense, is the means provided by law by which

it can be enforced,—by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened.' *Louisiana* v. *New Orleans,* 102 U. S. 203 (26 L. Ed. 132).'' *Thompson* v. *Auditor General,* 261 Mich. 624, 635.

In our opinion the right to have the property sold in the place agreed upon is a substantial right and to change this place of sale to another as permitted by the above act limits the rights of the mortgagee. Such change is more than a change in remedy, it is a change of a substantial right and to this extent the act in question is unconstitutional in so far as it applies to contracts executed before the act became effective. It follows that the mortgage foreclosure sale, not being affected by the above act, is otherwise valid. ...

Plaintiffs urge that they are entitled to the sum of $625, an overpayment by Brown to Salzberg and therefore an asset of Brown's. This claim apparently was not raised before the trial court as no finding was made upon this issue. The record does show that on December 19, 1938, Brown and Anna Salzberg entered into a written option to purchase the business known as Ezeon Tie Company at the price of $4,500 on the following terms: $2,500 cash and $2,500 at a later date in two equal payments. The option to purchase expired February 1, 1939, while the bill of sale consummating the deal was executed February 24, 1939. The bill of sale does not mention the actual consideration, while the option to purchase also mentions the purchase price as being the sum of $5,000. If the true price is the sum of $4,500 then Brown has an asset of $500 which is subject to appropriate action by his creditors. It becomes

necessary to remand this issue to the trial court for the purpose of receiving evidence of the actual consideration received for the bill of sale.

Plaintiffs also urge that the die and press and other fixtures purchased by Brown after the execution of the chattel mortgage and not mentioned in the sheriff's bill of sale are the property of Brown and subject to execution by his creditors. The trial court found as a fact that, by the foreclosure, Salzberg became the owner of the stock of merchandise, furniture, fixtures and machinery of the business without finding any exceptions. We note that the chattel mortgage clearly applies to after-acquired property. The die and press were admittedly a part of the assets of the business. Under the finding of fact by the trial court, they were included in the foreclosure and should have been included in the sheriff's bill of sale. We cannot say that the die and press and other fixtures are assets subject to execution by Brown's creditors.

It is also urged that the transfer of Brown's assets was made with the intent to defraud his creditors. The trial court found as a fact that no fraud or conspiracy has been practiced by the defendants. Fraudulent intent is a question of fact and not one of law. See 3 Comp. Laws 1929, § 13437 (Stat. Ann. § 26.974). There is evidence to sustain the finding of fact by the trial court. In such cases we do not reverse.

The decree of the trial court is affirmed and modified. Defendants may recover costs.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.