## KAPLAN *v.* CITY OF HUNTINGTON WOODS.

1. COVENANTS—BUILDING RESTRICTIONS.
     Building restrictions are private property, an interest in real
     estate in the nature of an easement, go with the land, and are
     a property right of value.

2. MUNICIPAL CORPORATIONS—CHARTERS—IMPOSITION OF BUILDING
   RESTRICTIONS.
     The failure to comply with charter requirements as to disposi-
     tion of city property voided agreement imposing building
     restriction on vacant city lots which restriction rendered
     valueless.

3. SAME—PROPERTY—CHARTER.
     A city commission, mayor and city clerk may not give away a
     valuable property right of the city without complying with
     charter provisions relative to disposition of property, where
     not for a corporate purpose.

4. CONTRACTS—PUBLIC MONEY TO FURTHER PRIVATE ENTERPRISE.
     Contracts which involve an attempt to use public money for the
     furtherance of a private enterprise are void.

5. MUNICIPAL CORPORATIONS—CREDIT—PUBLIC PURPOSE.
     No city may loan its credit for any other than a public purpose
     (Const 1908, art 8, § 25).

6. SAME—PROPERTY—GIFT—CONSTITUTIONAL LAW.
     A gift or donation of money or property for a private purpose
     by a city such as participation with others in an agreement
     to restrict the use of city-owned lots to single-family
     dwellings, violates provisions of the Constitution relative
     to use of the credit of the State and cities and is *ultra
     vires* (Const 1908, art 8, § 25; art 10, § 12).

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur, Covenants, Conditions and Restrictions §§ 193, 194.
[3, 8] 38 Am Jur, Municipal Corporations § 487.
[4, 5, 6] 37 Am Jur, Municipal Corporations §§ 119, 120.

7. OFFICERS—NOTICE OF LIMITATIONS ON POWERS.
   Those dealing with public officials must take notice of their powers.

8. MUNICIPAL CORPORATIONS—PROPERTY—CHARTERS.
   Charter requirements for the sale of municipal property must be substantially complied with.

9. SAME—COVENANTS—CHARTERS—PROPERTY—VALUE.
   The participation by a city in the imposition of a restrictive agreement relative to the use of city-owned lots which rendered them valueless, with or without consideration and without compliance with charter requirement, resulted in a void agreement.

10. COSTS—PUBLIC QUESTION—CONSTRUCTION OF PLAYGROUND.
    No costs are allowed in suit to enjoin city from constructing a playground on city property, claimed to be subject to restrictive covenants not permitting such use, a public question being involved.

Appeal from Oakland; Doty (Frank L.), J.  Submitted October 8, 1959.  (Docket No. 36, Calendar No. 48,060.)  Decided November 24, 1959.

Bill by Sheldon Kaplan and Phyllis Kaplan against the City of Huntington Woods, a municipal corporation, to enjoin construction of playground on lots restricted by agreement for residential purposes.  Decree for plaintiffs.  Defendant appeals. Reversed and remanded.

*James S. Thorburn,* City Attorney, for defendant.

KAVANAGH, J.  Plaintiffs filed a bill of complaint in the Oakland county circuit court to restrain defendant city of Huntington Woods from constructing a playground on certain lots fronting on Woodward avenue, described as lots 73 and 74 of Huntington Woods subdivision, Oakland county, Michigan.

Plaintiffs are the owners of lot 125 which immediately adjoins lot 73 on the rear.  The defendant

city prior to 1950 acquired the fee title to considerable property along the west side of Woodward avenue and on the south side of Eleven Mile road in the city of Huntington Woods. In addition to lots 73 and 74, the city owns lots 57, 64, 67 and 80 along Woodward avenue. All of the Woodward avenue lots owned by defendant except lot 67 are included in the restriction agreement involved in this controversy.

Sometime between June 22, 1950, and August 12, 1950, the defendant, by its then mayor and clerk, signed a restriction agreement, which agreement was pursuant to a resolution of the city commission of the city of Huntington Woods. The agreement was passed at a meeting of the city commission on June 22, 1950. This restriction agreement, together with other sets of restriction agreements, required, among other things, that the land so bound "shall be used for residence purposes only with but one single residence to each lot."

All of the land in the city of Huntington Woods fronting on Woodward avenue was restricted by building restrictions for single-family-dwelling use prior to June, 1950. By the restriction agreement above referred to single-family-dwelling building restrictions as to the 5 city-owned lots were extended. Other than the 5 city-owned lots, only the owners of lots 62 and 81 on Woodward avenue signed the building restrictions. Thus, of the 29 lots facing Woodward avenue in the Huntington Woods subdivision, only 7 lots were covered by the restriction agreement. The remaining 22 lots subsequent to the decision of this Court in *Bassey* v. *City of Huntington Woods,* 344 Mich 701, which voided a city zoning ordinance purporting to restrict the Woodward avenue lots to single-family-dwelling use, were open for commercial development and use.

The charter of the city of Huntington Woods at the time of the execution of the said restriction agreement and ever since that time provides:

"CHAPTER 2—GENERAL POWERS

\*      \*      \*

"Section 2.   The city shall have power:

"(1) To acquire by purchase, gift, condemnation, lease, or otherwise, real and personal property, or any interest therein, for any public use or purpose within the scope of its powers, located either within or without its corporate limits and either within or without the limits of the county of Oakland, unless prohibited by the Constitution or laws of the State; and to hold, manage, control, lease, sell or otherwise dispose of the same; provided that no property of a value in excess of $2 per capita according to the last preceding United States census, or any park, cemetery or any part thereof, or any property bordering on a waterfront, shall be sold unless approved by 3/5 of the electors voting thereon at a general or special election, and no property of a value of more than $500 shall be sold until sealed proposals therefor have first been advertised for and received. The city commission may appropriate funds for the maintenance and upkeep of property acquired by it. Any gift of property may be accepted whether made directly or in trust and if in trust the commission shall have full power to carry out the terms of such trust."

It is agreed that the population of the city of Huntington Woods, by United States census of 1950, was 4,949 persons. It is further agreed that no election was held and no sealed bids were taken pursuant to the charter in connection with the execution of the restriction agreement in question. The sole consideration for the execution of said restriction agreement by the city of Huntington Woods was the mutual promises that appear in said restriction

agreement. Proofs further disclose that all of the land on Woodward avenue in the city of Huntington Woods owned by the city of Huntington Woods immediately prior to the execution of the restriction agreement was worth $42,100. Testimony discloses that the present value of the said lots is $120,000 to $130,000. Testimony further discloses that restricted to residential purposes only, the land in 1950 was worth practically nothing. In 1956 this Court in the case of *Bassey* v. *City of Huntington Woods,* 344 Mich 701, determined that all of this Woodward avenue frontage was utterly worthless for residential purposes.

The record does not disclose any evidence of a general plan to restrict all of the Woodward avenue lots to single-family-dwelling purposes, but to the contrary only 5 out of 6 lots owned by the city were restricted and those were not contiguous but scattered.

The plaintiff sought injunctive relief restraining the defendant city from constructing a playground on the 2 lots in question.

The city claims: 1. No consideration passed to the defendant city for the restrictive agreement. 2. Under the charter provisions a property interest could not be transferred or sold unless authorized and approved by 3/5ths of the electors voting at a general or special election. 3. No sale involving property of a value of more than $500 may be sold until sealed proposals therefor have been first advertised for and received. 4. Since the charter requirements had not been met, the restrictive agreement was void and of no force and effect. 5. There appears to be no general plan for restriction for residential purposes only with 1 single residence to each lot for the lots along Woodward avenue in the city of Huntington Woods. 6. Said agreement was not binding upon the city of Huntington Woods.

The trial judge, in a written opinion, found that the execution of the restrictive agreement in question was not an *ultra vires* act; that it was not necessary to follow charter requirements since the execution of the restrictive agreement was not a sale of city-owned real estate and the charter requirements mentioned applied only to sales.

Defendant, city of Huntington Woods, appeals to this Court and presents 3 questions:

1. "Did the city of Huntington Woods have the power to enter into the restriction agreement in question?"

2. "Was there a general plan binding on all of the Woodward avenue lots?"

3. "Are city owned lots bound by single-family-dwelling restrictions imposed by the city when a zoning ordinance restricted to single-family use has been declared to be unconstitutional as to the same lots?"

In the early case of *Allen* v. *City of Detroit,* 167 Mich 464 (36 LRA NS 890), Justice STEERE, writing for a unanimous Court, said (p 473):

"Building restrictions are private property, an interest in real estate in the nature of an easement, go with the land, and are a property right of value, which cannot be taken for the public use without due process of law and compensation therefor; the validity of such restriction not being affected by the character of the parties in interest. (Citing authorities.)"

Justice POTTER, writing for the Court in *Bigham* v. *Locklin,* 275 Mich 545, 553, said: "These building restrictions constitute property."

Under the above authorities, the imposition of a restriction is the loss of the use of a valuable property right, and it would appear that such right was disposed of by the city of Huntington Woods

either as a sale or a gift. It becomes unnecessary for this Court to determine which it is. If the mutual or reciprocal promises of the parties to the restriction agreement were a consideration for the execution of the said agreement, then clearly a sale was involved. Since the charter required an advertisement and sealed bids to sell or otherwise dispose of the same, and since the charter further provided that in the case of this type, where the property disposed of was of a value in excess of $2 per capita, to wit $9,898, approval of 3/5ths of the electors voting at a general or special election was necessary to authorize a sale. Failure to comply with the charter requirements voided the restriction agreement. On the other hand if no consideration moved to the city, the disposition of the valuable property right by the city commission, the mayor and the clerk constituted an actual gift of the property right.

10 McQuillin, Municipal Corporations (3d ed), § 28.43, p 106, states as follows:

"It has been shown that a municipality cannot give away its property or expend money for purposes other than corporate ones, and it follows that a municipality has no power in any manner to dispose of property of the corporation without consideration, where not for a corporate purpose."

In *Skutt* v. *City of Grand Rapids,* 275 Mich 258, 266, Justice Bushnell, speaking for a majority of this Court, said:

"Contracts which involve an attempt to use public money for the furtherance of a private enterprise are void. 3 McQuillin on Municipal Corporations (2d ed), § 1270. See Constitution of 1908, art 10, § 12, art 8, § 25; and title 5, § 21, of the city charter of Grand Rapids."

Article 10, § 12, of the Constitution of Michigan (1908) provides:

·"The credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private."

Article 8, § 25, of the same document provides:

"No city or village shall have power   *   *   *   to loan its credit, nor to assess, levy or collect any tax or assessment for other than a public purpose."

A gift or donation of money or property by the city would, in our opinion, constitute a violation of both the constitutional provisions quoted above. *People, ex rel. Detroit & Howell R. Co.*, v. *Salem*, 20 Mich 452 (4 Am Rep 400); *Bay City* v. *State Treasurer*, 23 Mich 499; *Dodge* v. *Van Buren Circuit Judge*, 118 Mich 189; *Michigan Sugar Co.* v. *Auditor General*, 124 Mich 674 (56 LRA 329, 83 Am St Rep 354); *Michigan Corn Improvement Association* v. *Auditor General*, 150 Mich 69; *Detroit Museum of Art* v. *Engel*, 187 Mich 432.

Municipalities may not give away public property without a consideration. The action of the city of Huntington Woods constituted an *ultra vires* act which voided the restrictive agreement in question.

Appellees might argue that they were not aware of the restrictions in the city charter. This argument, in some cases valid in controversy with an individual, is an empty argument when used in litigation with a city. The case of *Utica State Savings Bank* v. *Village of Oak Park*, 279 Mich 568, 578, 579, states the rule in this regard:

" 'It is fundamental that those dealing with public officials must take notice of their powers. *McBrian* v. *City of Grand Rapids*, 56 Mich 95, 108; *Campau* v. *City of Detroit*, 106 Mich 414, 418.' *Schneider* v. *City of Ann Arbor*, 195 Mich 599, 608.

" 'Persons dealing with a municipal corporation through its officers must at their peril take notice of the authority of the particular officer to bind

the corporation. If his act is beyond the limits of his authority, the municipality is not bound.' *Rens v. City of Grand Rapids,* 73 Mich 237, 247."

Charter requirements for sale of municipal property must be substantially complied with. *Kalamazoo Municipal Utilities Association* v. *City of Kalamazoo,* 345 Mich 318 (61 ALR2d 583).

Since it is apparent that the decree of the lower court must be reversed, we do not consider it necessary to answer the other questions.

The case is remanded to the circuit court for the entry of a decree in accordance with this opinion. A public question being involved, no costs will be allowed.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.