JAYNO HEIGHTS LANDOWNERS ASSOCIATION v PRESTON

Docket No. 77-1765. Submitted June 21, 1978, at Detroit.—Decided
September 5, 1978.

Defendant John M. Preston owned a property the deed to which
contained a restrictive covenant to the effect that any dwelling
upon the property should be occupied by no more than one
single family. Mr. Preston built a dwelling house on the prop-
erty and leased the house to defendants Margaret Evans and
Larry Goldsworthy, Jr., who used the house to provide a home
licensed under the Adult Foster Care Facility Licensing Act.
Plaintiff, Jayno Heights Landowners Association, sued defend-
ants to enforce a restrictive covenant in the deed to Mr.
Preston which restricted the use of the property to single
family residential purposes. Waterford Township intervened as
a party plaintiff but withdrew by stipulation of the parties. The
Oakland Circuit Court, William John Beer, J., granted sum-
mary judgment in favor of the plaintiff. Defendant appeals.
*Held:*

1. Definitions employed in housing codes and zoning ordi-
nances do not control the interpretation of restrictive cove-
nants.

2. Under the facts of this case, the public policy in favor of
providing adult foster care facilities does not outweigh the
public policy favoring the rights of property owners to restrict
the use of their property to single family dwellings occupied by
single family units.

Affirmed.

McGREGOR, J., dissented. He would hold that six or fewer
elderly women living together in a licensed adult foster care
facility constitute a "single family unit" with a proper basis of

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 277.
[2] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 193.
[3] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 182.
[4, 5] 20 Am Jur 2d, Covenants, Conditions, and Restrictions §§ 209–
211.
Hospital, sanitarium, home for aged, nursing home, or the like, as
violation of restrictive code. 94 ALR2d 726.

affiliation in their mutual need for foster care for purposes of interpreting a restrictive covenant limiting occupancy to only a single family unit.

OPINION OF THE COURT

1. COVENANTS—RESTRICTIVE COVENANTS—DEEDS—INTERPRETATIONS OF RESTRICTIVE COVENANTS—HOUSING CODES—ZONING ORDINANCES.

Definitions employed in housing codes and zoning ordinances do not control the interpretation of restrictive covenants.

2. COVENANTS—RESTRICTIVE COVENANTS—IMPAIRMENT OF CONTRACT—LEGISLATIVE ACTION—POLICE POWER.

Private deed restrictions are contractual rights and should not be impaired by state legislative action absent a lawful exercise of the police power.

3. COVENANTS—RESTRICTIVE COVENANTS—PUBLIC POLICY.

Private residential restrictive covenants, if established by proper instruments, are favored by public policy.

DISSENT BY McGREGOR, J.

4. COVENANTS—RESTRICTIVE COVENANTS—SINGLE FAMILY UNIT—DEFINITION OF FAMILY.

*The word "family" denotes a concept the application of which is dependent upon the basis of affiliation of the group being analyzed along with the public policies invoked by the particular circumstances of the situation; six unrelated elderly women residing together in an adult foster care facility have a basis of affiliation in their mutual need for foster care and constitute a "single family unit" within the meaning of a deed restriction limiting the use of property to occupancy by a single family unit.*

5. COVENANTS—RESTRICTIVE COVENANTS—PUBLIC POLICY—FOSTER CARE FACILITIES.

*It is the confirmed public policy of Michigan to provide adequate, regulated and safe foster care facilities for the elderly in residential neighborhoods, and, while the principle that restrictive covenants which violate public policy may not be enforced must be applied cautiously, that public policy outweighs the policy supporting the enforcement of residential restrictive covenants which would impede the establishment of residential homes for the elderly.*

*Milmet, Vecchio, Kennedy & Carnago, P. C.* (by *Donald E. Schuster*), for plaintiffs.

*Peter L. Conway, III,* for defendants.

Before: R. M. MAHER, P. J., and J. H. GILLIS and McGREGOR,* JJ.

J. H. GILLIS, J. Defendants appeal as of right from an order entered in Oakland County Circuit Court granting plaintiff's motion for summary judgment. The judgment upheld the validity of a restrictive covenant and enjoined defendant Preston from using his residence as an adult foster care facility.

Plaintiff Charter Township of Waterford had intervened in the matter in an effort to enforce its zoning ordinance, but withdrew by stipulation of the parties due to the passage of MCL 125.286a; MSA 5.2963(16a) which provides that a state licensed residential facility providing supervision or care, or both, to six or fewer persons is a residential use of property for the *purpose of zoning* and a permitted use in all residential zones including those zoned for signle family dwellings.[1]

The covenant in the deed to the property in question reads as follows:

"Jayno Heights Subdivision No. 1, shall be used for residential purposes exclusively, and no more than one single family dwelling house, with usual outbuilding for use in connection therewith, shall be erected or constructed on any lot in said subdivision and any residence so constructed shall be occupied by not more than one single family unit."

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCL 125.286a; MSA 5.2963(16a).

The record reveals that defendant Preston built a single family dwelling house on a lot in the subdivision and then leased the property to defendants Evans and Goldsworthy. Defendants Evans and Goldsworthy then used the property to provide a home for elderly women. They are licensed under the Adult Foster Care Facility Licensing Act, MCL 331.681 *et seq.;* MSA 16.610(1) *et seq.*

On appeal, defendant contends that the restrictive covenant at issue has been complied with in that the occupants of the residence constitute one single family unit under Michigan law.

"The word 'family' is one of great flexibility. In *Carmichael v Northwestern Mutual Benefit Ass'n,* 51 Mich 494, [16 NW 871 (1883)], it was said by Chief Justice GRAVES, speaking for the Court:

" 'Now this word "family," contained in the statute, is an expression of great flexibility. It is applied in many ways. It may mean the husband and wife having no children and living alone together, or it may mean children, or wife and children, or blood relatives, or any group constituting a distinct domestic or social body. It is often used to denote a small select corps attached to an army chief, and has even been extended to whole sects, as in the case of the Shakers.

" 'We discover nothing in the statute implying a narrow sense, and we should not be inclined to attribute one where the result would cause injustice.' " *Boston-Edison Protective Association v The Paulist Fathers, Inc,* 306 Mich 253, 259; 10 NW2d 847 (1943).

The Court in *Boston-Edison, supra,* construed a restrictive covenant which stated that "[t]he said party of the second part (she) shall not use or occupy said lots except for a single dwelling house and dwelling house purposes only." *Boston-Edison Protective Association, supra,* at 256. The Court held that use of a six bedroom home by five priests

of the Paulist Fathers for private residential purposes did not violate the restrictive covenant.

However, *Boston-Edison* and its definition of family does not apply here.

The restrictive covenant in the instant case specifically limits the occupation of the residence to not more than one single family unit. The restrictive covenant in *Boston-Edison* is silent in respect to who shall occupy the dwelling.

Moreover, the dwelling at issue in the instant case is being used for commercial purposes[2] while the Paulist Fathers in *Boston-Edison* made no commercial use of their residence. There is nothing in the record to indicate that the residents of the property at issue are anything more than a group of unrelated individuals sharing a common roof. Accordingly, we cannot conclude that the property in this case is being used by a single family unit.

Defendants also argue that public policy forbids the enforcement of the restrictive covenant. Defendants direct us to the recent change in the township zoning act which defines adult foster care facilities as single family residences for purposes of zoning ordinances. MCL 125.286a; MSA 5.2963(16a). While this statute certainly expresses public policy, the Michigan Supreme Court has held that definitions employed in housing codes and zoning ordinances do not control the interpretation of restrictive covenants. *Phillips v Lawler,* 259 Mich 567; 244 NW 165 (1932), *Morgan v Matheson,* 362 Mich 535, 541; 107 NW2d 825 (1961), *cf. Karpenko v Southfield,* 75 Mich App 188, 193, n 3; 254 NW2d 839 (1977).

---

[2] Defendants admit that the residents pay for various domestic services as well as rent and further admit that defendant Preston receives lease payments from defendants Evans and Goldsworthy at the rate of $6,000 per year.

In addition, the township zoning act, *supra,* is expressly directed towards zoning restrictions, not private restrictive covenants.

"In order to implement the policy of this state that persons in need of community residential care shall not be excluded *by zoning* from the benefits of normal residential surroundings, a state licensed residential facility providing supervision or care, or both, to 6 or less persons shall be considered a residential use of property *for the purposes of zoning* and a permitted use in all *residential zones,* including those zoned for single family dwellings, and shall not be subject to a special use or conditional use permit or procedure different from those required for other dwellings of similar density in the same zone." (Emphasis supplied.) MCL 125.286a(2); MSA 5.2963(16a)(2).

A careful reading of the statute reveals that the Legislature did not intend to impinge upon the enforcement of private deed restrictions. Private deed restrictions are contractual rights and should not be impaired by state legislative action absent the lawful exercise of the police power. See *Spitzer v Brown,* 305 Mich 455; 9 NW2d 673 (1943).

We find no such exercise of the police power by the Legislature in respect to private restrictive covenants. We also note that private residential restrictions, if established by proper instruments, are favored by public policy. See *Oosterhouse v Brummel,* 343 Mich 283; 72 NW2d 6 (1955).

This Court does not believe that the public policy in favor of providing adult foster care facilities, under the facts of this case, outweighs the public policy favoring the rights of property owners to restrict the use of their property to single family dwellings occupied by single family units.

Affirmed. Costs to plaintiffs.

R. M. MAHER, P. J., concurred.

McGREGOR, J. *(dissenting)*. Defendants appeal as of right from the trial court's order granting plaintiff's motion for summary judgment. In granting that motion, the court enjoined defendant Preston from using his residence in the Jayno Heights Subdivision as an adult foster care facility. The trial court based its decision on the language of a restrictive covenant contained in the deed to the property in question which limited the use of the property to a single family residence. I respectfully dissent from my brothers' affirmance of the decision below.

The restrictive covenant in question provides that:

"Jayno Heights Subdivision No. 1, shall be used for residential purposes exclusively, and no more than one single family dwelling house, with usual outbuilding for use in connection therewith, shall be erected or constructed on any lot in said subdivision and any residence so constructed shall be occupied by not more than one single family unit."

Defendant Preston built a single family dwelling house on his lot and leased the property to defendants Evans and Goldsworthy who used the structure to provide a home for six elderly women. They are licensed under the Adult Foster Care Facility Licensing Act, MCL 331.681 *et seq.;* MSA 16.610(1) *et seq.*

Plaintiff, Jayno Heights Landowners Association, brought this action to enjoin defendants' use of the property in question as a foster care facility alleging that this use violated the restrictive covenant. Plaintiff Charter Township of Waterford had intervened in an effort to enforce its zoning ordi-

nance, but withdrew by stipulation due to the passage of MCL 125.286a; MSA 5.2963(16a), which provides that a state licensed residential facility providing supervision or care, or both, to six or fewer persons is a permitted, residential use of property for the purposes of zoning.

On appeal, defendants argue that a group of six elderly women living in a licensed adult foster care facility should be construed as a family for purposes of this restrictive covenant and that, in any event, enforcement of this restrictive covenant violates the public policy enunciated in Const 1963, art 8, § 8, and the Adult Foster Care Facility Licensing Act, MCL 331.681 *et seq.;* MSA 16.610(1) *et seq.,* favoring the provision of regulated and safe foster care for the elderly in a residential environment. Since I agree with both contentions, I would reverse.

In the recent case of *Bellarmine Hills Ass'n v The Residential Systems Co,* 84 Mich App 554; 269 NW2d 673 (1978), another panel of this Court reversed an order of the trial court enjoining defendants' use of a residence for the treatment of six or fewer mentally retarded children living with a resident foster parent and licensed by the Department of Social Services pursuant to the child care organizations act, MCL 722.111, *et seq.;* MSA 25.358(11) *et seq.* A restrictive covenant contained in the deed to the lot in question provided, in terms similar to those contained in the covenant in the instant case, that the property could be used only for one single private family dwelling. In reversing the decision below, the Court held that the children and foster parent living in defendant's home constituted a family for purposes of the restrictive covenant.

The *Bellarmine* Court described the policy conflict between enforcing the covenant and permit-

ting the described use of the property before reaching the basis of its decision:

"Unquestionably, promoting the development and maintenance of quality programs and facilities 'for the care and treatment of the mentally handicapped is a settled public policy of our state. That policy has both a constitutional and legislative foundation. But we must also recognize that restrictive covenants may constitute valuable property rights. *Kaplan v Huntington Woods,* 357 Mich 612, 617; 99 NW2d 514 (1959), *Monroe v Menke,* 314 Mich 268, 273; 22 NW2d 369 (1946). Further, it has been the policy of our judiciary to protect property owners who have complied with the restrictions from violations of the covenants by others. *Wood v Blancke,* 304 Mich 283, 287–288; 8 NW2d 67 (1943)." (Footnotes omitted.) 84 Mich App at p 558.

The Court then discussed the legal definition of the term "family":

"Concerned with the legal definition of family, our Supreme Court, in the seminal case of *Carmichael v Northwestern Mutual Benefit Ass'n,* 51 Mich 494, 496; 16 NW 871 (1883), stated:

" 'Now this word "family", contained in the statute, is an expression of great flexibility. It is applied in many ways. It may mean the husband and wife having no children and, living alone together, or it may mean children, or wife and children, or blood relatives, or any group constituting a distinct domestic or social body. It is often used to denote a small select corps attached to an army chief, and has even been extended to whole sects, as in the case of the Shakers.'

"Our examination of subsequent cases and authority from other jurisdictions discloses no more specific definition of the term. Rather, the word family denotes a concept, the application of which is dependent upon the basis of affiliation of the group being analyzed juxtaposed with the public policies invoked by the particular circumstances of the case being reviewed.

\* \* \*

"The basis of affiliation in the case under considera-
tion is the mutual need of the children for expert
treatment of their mental retardation. We have previ-
ously noted the momentous public policy supporting
that endeavor. Defendants have afforded treatment to
the children in an atmosphere that enables them to
retain the benefits of residing in a household, instead of
an institution. Further, parents of mentally retarded
children may be encouraged to seek professional care
for their children, knowing that they will reside in a
homelike environment in lieu of being 'institutional-
ized'." 84 Mich App at p 561.

I would conclude for similar reasons that six
unrelated elderly women residing together in an
adult foster care facility constitute "one single
family unit" within the meaning of the restrictive
covenant in question. The basis of affiliation of
these elderly women is their mutual need for
foster care. By providing these services in a small
dwelling in a residential community, defendants
are preserving for their patients many of the
benefits of family life which are absent in more
institutionalized settings. There is a powerful pub-
lic policy which supports this use of the property.
For these reasons, the use of defendant Preston's
home as an adult foster care facility should be
permitted.

In reversing the trial court's decision below,
however, I would not rely solely on the legal status
of the group of women concerned. While private
residential restrictions established by proper in-
struments are favored by public policy, such re-
strictions must not violate a sound public policy.
*Oosterhouse v Brummel,* 343 Mich 283; 72 NW2d 6
(1955). The principle that contracts in contraven-
tion of public policy are not enforceable, however,

should be applied with caution. *Sipes v McGhee,*
316 Mich 614; 25 NW2d 638 (1947).

Const 1963, art 8, § 8, provides that:

"Institutions, programs and services for the care,
treatment, education or rehabilitation of those · inhabi-
tants who are physically, mentally or otherwise seri-
ously handicapped shall always be fostered and sup-
ported."

The preface to the Adult Foster Care Facility
Licensing Act, MCL 331.681 *et seq.;* MSA 16.610(1)
*et seq.,* provides that it is:

"AN ACT to provide for the licensing and regulation
of adult foster care facilities providing alternate care
services including room and board, supervision, assist-
ance, protection and personal care to adults not requir-
ing organized institutional medical or nursing care; and
to provide penalties for violations of this act."

Section 5 of that act provides that "[a]n adult
foster care facility shall not be licensed to care for
more than 6 adults of age 65 or older". Section 8,
subsection 1, provides further that a license shall
not be granted under the act when this would
"substantially contribute to an excessive concen-
tration of community residential facilities" within
any community in the state.

Finally, MCL 125.286a(2); MSA 5.2963(16a)(2)
states:

"In order to implement the policy of this state that
persons in need of community residential care shall not
be excluded by zoning from the benefits of normal
residential surroundings, a state licensed residential
facility providing supervision or care, or both, to 6 or
less persons shall be considered a residential use of
property for the purposes of zoning and a permitted use

in all residential zones, including those zoned for single family dwellings, and shall not be subject to a special use or conditional use permit or procedure different from those required for other dwellings of similar density in the same zone."

Subsection 1 of that provision provides that a "state licensed residential facility" is a residential structure licensed by the state pursuant to MCL 331.681; MSA 16.610(1) or MCL 722.111; MSA 25.358(11).

It is apparent from the above-cited constitutional and statutory language that it is the confirmed public policy of this state to provide adequate, regulated and safe foster care facilities for the elderly in residential neighborhoods throughout the state. The Legislature's use of a six person limitation in § 5 of the Adult Foster Care Facility Licensing Act reveals its intent to promote facilities of a small, familial nature. That the Legislature intended that such facilities be located in residential communities is beyond question in light of § 8's prohibition of excessive concentrations of such facilities in any given community. And, while MCL 125.286a; MSA 5.2963(16a) deems such facilities the residential use of property for the purposes of zoning without mentioning restrictive covenants, this law reiterates the public policy favoring the establishment of such facilities.

In applying with the utmost caution the principle that restrictive covenants which violate public policy may not be enforced, I would find that the public policy favoring the establishment of residential adult foster care facilities outweighs the policy supporting the enforcement of residential restrictive covenants and that the covenant in question may not be enforced to enjoin defendants' use of

this property as a licensed foster care facility. In reaching this result, it should be noted that the balance between the competing policies in this case is exceedingly close and that MCL 331.688(1); MSA 16.610(8)(1) serves to prohibit the excessive concentration of such facilities in any community. Residential homeowners are therefore protected from any detriments which may result from such a situation.