*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID SAUNDERS, LAURA SAUNDERS, PATRICK HEREK, MARYANN HEREK, ROBERT GERWIN, CONNIE ROSE, COOPER GREEN, MICHELLE GREEN, GRETCHEN HERTZ, RICHARD KLUCK, DEBORAH KLUCK, ALEXANDER LUTTSCHYN, and JEAN LUTTSCHYN,

        Plaintiffs-Appellants,

and

MICHAEL BUCK, SHARON BUCK, KELLY A. PAUL, PAUL ASH, MARY ASH, JOSEPH MONROE, NANCY MONROE, WILLIAM MONGER, MARY JANE MONGER, MARIAN STAROSTA, ALICIA STAROSTA, JERRY LUNDY, LINDA LUNDY, WILLIAM GAINES, LENA GAINES, ROBERT ROMALIA, MARY ANN ROMALIA, MARCELO PONTI, MARIA PONTI, MICHAEL JILES-OVORUS, PAMELA JILES-OVORUS, CHRISTOPHER SOTO, MELISSA SOTO, SCOTT CESARZ, DONNA CESARZ, CHARLES CESARZ, and STEPHANIE CESARZ,

        Plaintiffs,

v

CANDICE COUNTS and HUMMINGBIRD MEADOWS, INC.,

        Defendants-Appellees.

UNPUBLISHED
February 7, 2019

No. 341268
Livingston Circuit Court
LC No. 17-029273-CZ

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiffs, several homeowners in the Pine Valley Estates subdivision, appeal by right the circuit court's order granting summary disposition to defendants, Candice Counts, a fellow Pine Valley homeowner, and Hummingbird Meadows, Inc., the adult foster care facility she operates from her home, and denying their cross-motions for summary disposition and for permanent injunctive relief. We affirm.

## I. FACTS

Defendant Counts purchased property in Pine Valley Estates at 7146 Wide Valley Drive in June 2014. She incorporated Hummingbird Meadows as a for-profit operation in September 2014, and the Department of Licensing and Regulatory Affairs (LARA) granted it a license effective January 20, 2017. Counts, a registered nurse, lives in the home and cares for the day-to-day needs of six elderly residents with disabilities. Shortly before the facility received its license, plaintiffs filed their complaint and requested permanent injunctive relief, alleging that the operation of the facility violated covenants disallowing business enterprises in the subdivision. Their allegations included that the business generated problematic amounts of additional traffic.

Defendants responded with the affirmative defense that, because Hummingbird Meadows was a licensed adult foster care family home,[1] plaintiffs' claims were barred under the Adult Foster Care Facility Licensing Act (AFCFLA), MCL 400.701 *et seq.* Defendants asserted that the traffic impact of the adult foster care family home is minimal because the residents did not drive or otherwise maintain personal vehicles and that any increased traffic from emergency medical services would be minimal because the home was located near the entrance of the subdivision. Defendants claimed that the operation of an adult foster care family home is a single-family residential use of property by law and that the operation of Hummingbird Meadows did not conflict with covenants forbidding operations of business enterprises. They further contended that public policy favored the integration of the elderly into ordinary residential communities through the use of adult foster care homes.

Plaintiffs and defendants initially filed cross motions for summary disposition pursuant to MCR 2.116(C)(10) in April and May 2017 respectively, arguing in accord with the allegations and defenses they had raised in their initial pleadings. The trial court denied the motions, desirous of additional factual development through discovery. After further discovery, defendants renewed their motion for summary disposition. Plaintiffs opposed the motion and sought summary disposition pursuant to MCR 2.116(I)(2) (party opposing summary disposition motion is entitled to judgment). Subsequent to oral argument, the trial court granted defendants'

---

[1] " 'Adult foster care family home' means a private residence with the approved capacity to receive 6 or fewer adults to be provided with foster care for 5 or more days a week and for 2 or more consecutive weeks. The adult foster care family home licensee shall be a member of the household and an occupant of the residence." MCL 400.703(5).

motion, citing as authority for its decision *City of Livonia v Dep't of Social Servs*, 423 Mich 466; 378 NW2d 402 (1985).

## II. ANALYSIS

Plaintiffs argue on appeal that the trial court erred by granting defendants' motion for summary disposition and denying theirs because there is no genuine issue of material fact that the operation of an adult foster care home on the subject property violates protective covenants and restrictions against operating a business enterprise on the premises. We review de novo a trial court's decision on a motion for summary disposition. *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 212; 737 NW2d 670 (2007). Likewise, we review de novo as a question of law the scope of a deed restriction. *Id*.

Defendants filed their motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a claim. Summary disposition is proper if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." MCR 2.116(C)(10).

The covenants at issue in the present case specify that the Pine Valley Estates subdivision's "premises shall only be used for single family residential purposes," and that "[n]o profession of any kind, or any business enterprise or any manufacturing shall be conducted upon said lands or premises, or any part thereof." A covenant "is a contract created with the intention of enhancing the value of property, and, as such, it is a valuable property right." *Conlin v Upton*, 313 Mich App 243, 256; 881 NW2d 511 (2015) (quotation marks and citation omitted). "[R]estrictions which are clear on their face, reasonable in scope, and do not violate public policy will be upheld. *City of Livonia*, 423 Mich at 525. Further, "[r]estrictions for residence purposes are particularly favored by public policy and are valuable property rights." *Id*.

Plaintiffs concede that operation of Hummingbird Meadows might be a permissible residential use of the subject property, but argue that even if it is, it still violates the prohibition against conducting a business enterprise. As authority for their position, plaintiffs rely on the Michigan Supreme Court's distinction between a covenant requiring residential use and one prohibiting business or commercial use and its determination that activity complying with the former may nevertheless violate the latter. *Terrien v Zwit*, 467 Mich 56, 63; 648 NW2d 602 (2002). For support of their opposing position, defendants rely on *City of Livonia*. The *City of Livonia* Court held in relevant part that six developmentally disabled adults, and their resident caretakers, living in an adult foster care small group home and "function[ing] as a single housekeeping and social unit" occupied the home for "residential use," even if they had to pay for the items and services they received. *Id*. at 527-529. Defendants also contend that Michigan's express public policy favoring the establishment of residential homes for the elderly and persons with disabilities in residential neighborhoods further supports this outcome. We believe that defendants have the better argument.

*City of Livonia* involved appeals from several actions in which cities and residents challenged the use of residences as adult foster care small group homes for six or less developmentally disabled adults. Among other things, the city and homeowners alleged that operation of an adult foster care small group home would violate building and use restrictions

contained in the owners' deeds. *Id*. at 486. The covenant at issue limited use of the property to residential purposes and limited the type of structure that owners could build on the property to a "detached single-family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars." *Id*. at 524. In addition, the covenant prohibited activities on the property that were "noxious or offensive" or "anything which may become an annoyance or nuisance to the neighborhood." *Id*. The plaintiffs alleged that the unrelated disabled adults living in the adult foster care family home did not constitute a "single family," and that operation of the adult foster care small group home violated the deed's restrictive covenant because it was a commercial use of the property. *Id*. The Michigan Supreme Court rejected both of these arguments.

The Court first recognized that the covenant in *City of Livonia* did not define "family," but observed that the Court had long "construed the term to include more than just a nuclear or extended family whose members are related by consanguinity, marriage, or adoption." *Id*. at 526, citing *Carmichael v Northwestern Mut Benefit Ass'n*, 51 Mich 494, 496; 16 NW 871 (1883). Noting that the adults who resided at the home in question in *City of Livonia* functioned as a single housekeeping and social unit, and relying on this Court's reasoning in *Malcolm v Shamie*, 95 Mich App 132, 136; 290 NW2d 101 (1980),[2] the Supreme Court concluded that the home was being occupied by a single family and used for residential purposes. *Id*. at 527. Furthermore, the *City of Livonia* Court expressly "reject[ed] plaintiffs' attempt to characterize the operation of an adult foster care small group home as a business or commercial use of property." *Id*. at 528. The Court reasoned, "The fact that the adults may be required to pay for certain items and services . . . does not of itself transform the nature of the activities conducted in the home from residential to commercial." *Id*. at 529. Defendants contend that under *City of Livonia*, operation of an adult foster care family home, such as Hummingbird Meadows, constitutes a residential use of property, even though it may charge for services.

Contrariwise, plaintiffs rely on our Supreme Court's reasoning in *Terrien v Zwit*, 467 Mich 56 (2002). At issue in *Terrien* was "whether covenants permitting only residential uses, and expressly prohibiting commercial, industrial, or business uses, preclude the operation of a 'family day care home.[3]'" *Terrien*, 467 Mich at 58. The circuit court had held that a covenant precluding operation of a family day care center was contrary to public policy. *Id*. at 58-59. This Court affirmed, but on the ground that operation of a family daycare center was a residential use and could not also be a business or commercial use because the two uses were mutually

---

[2] In *Malcolm*, this Court concluded that five adults with intellectual disabilities who resided permanently in a small group home, in "an environment therapeutically designed to emulate a more conventional family environment should also be considered a family, and such use of the property, an appropriate family residential use." *City of Livonia*, 423 Mich at 527, quoting *Malcolm,* 95 Mich App at 136.

[3] A " 'family day care home' means a 'private home in which 1 but fewer than 7 minor children are received for care and supervision for periods of less than 24 hours a day . . . .' " *Terrien v Zwit*, 467 Mich at 59 n 2, quoting MCL 722.111(f)(iii), now MCL 722.111(o)(iii). 2018 PA 257, effective March 28, 2018.

exclusive. *Id*. at 59. Our Supreme Court disagreed with both assessments, distinguished between covenants barring commercial or business uses and those permitting only residential uses, determined that such covenants were not mutually exclusive, and held that operation of a family daycare center constituted a business or commercial use of property. *Id*. at 63. Thus, in the case at bar, plaintiffs argue that even if the use of Hummingbird Meadows is residential, operation of a for-profit adult foster care family home nevertheless violates the restrictive covenant prohibiting the conduct of a business enterprise.

We find plaintiffs' argument unpersuasive for several reasons. First, the distinction between covenants requiring residential use and those prohibiting business or commercial use did not originate with *Terrien*. As the *Terrien* Court pointed out, this Court had previously "recognized the distinction between a covenant permitting only residential uses and one that also expressly prohibits commercial, industrial, or business uses." *Id*., at 62, citing *Beverly Island Ass'n v Zinger*, 113 Mich App 322, 326; 317 NW2d 611 (1982). Thus, the legal framework clearly existed for the *City of Livonia* Court to invoke this distinction three years later and to rule in favor of the plaintiffs' argument that the operation of an adult foster care small group home was a business or commercial use of property. See *City of Livonia*, 423 Mich at 525.[4] For the reasons already discussed, the Court declined to do so.

Further, the factual differences between operation of an adult foster care family home and a family daycare center are significant. At daycare centers, parents or guardians of children drop the children off for temporary supervision by caregivers and pick them up later the same day. Daycare centers do not offer their clients permanent residency, the children typically do not have their own bedrooms, store their belongings there, or use the center as their legal address. Thus, recipients of daycare services do not reside together as a family or as a single housekeeping unit. By contrast, the residents at Hummingbird Meadows are permanent residents who use the home's address as their legal address and live together as a family or a single housekeeping unit.

Finally, the public policy imperatives underlying protections for adult foster care family homes are not present with regard to traditional home daycare operations. The *Terrien* Court rejected the argument that a covenant prohibiting business or commercial use of property did not prohibit operation of a family daycare center because "such restriction would be unenforceable as against 'public policy.' " *Terrien*, 467 Mich at 65-66. The Court found "no definite indications in the law of Michigan to justify the invalidation of a covenant precluding the operation of a 'family daycare homes.' " *Id*. at 68 (quotation marks omitted). Such is not the case with regard to the location of adult foster care homes in residential areas. The *City of Livonia* Court explained that, prior to the 1960s, intellectually and developmentally disabled persons "were routinely institutionalized." *City of Livonia*, 423 Mich at 480. However,

---

[4] The hearing officer that heard the city's objections to the decision of the Department of Social Services to issue a license to the adult foster care small group homes at issue in *City of Livonia* did in fact find that operation of the homes constituted a commercial or business, rather than residential, use of the property. *City of Livonia*, 423 Mich at 525.

[b]y the 1960's, a "distinct humanistic renaissance" had occurred, which stressed the "normalization" of disabled individuals. According to this approach, disabled persons who are unable to live with their families are allowed to reside in homes of normal size, located in normal neighborhoods, that provide opportunities for normal societal integration and interaction. Such community placement permits disabled persons to reach their full potential and become contributing, productive members of society.

Some communities, however, were and are reluctant to allow "community," "group," or "foster care" homes in residential areas. Zoning ordinances and practices have been used either to exclude such homes entirely or to restrict them to commercial areas. The result frequently is creation of "ghettos" of foster care homes, particularly in transitional residential areas, business, or institutional zones. Such concentrations of foster care homes often change the character of the neighborhoods, thus undercutting the purposes behind normalization and provoking negative reactions by area residents. [*Id*.at 480-481.]

In conformity with these trends, the Michigan Legislature enacted statutes for the purpose of licensing and regulating community residential facilities that provide "alternative care services to adults who do not require institutional medical or nursing care." *Id*. at 482; see 1972 PA 287, repealed and replaced by 1979 PA 218, MCL 400.701 *et seq*. The Legislature also enacted legislation to "prevent municipalities from using zoning ordinances as a basis for excluding or segregating adult foster care facilities." *City of Livonia*, 423 Mich at 482.[5] Definitions used in zoning statutes do not control the interpretation of restrictive covenants, *Jayno Hts Landowners Ass'n v Preston*, 85 Mich App 443, 447; 271 NW2d 268 (1978), nor do they or the AFCFLA "purport to regulate private restrictive covenants." *City of Livonia*, 423 Mich at 525. Nevertheless, such statutes do express public policy. See *Jayno Hts Landowners Ass'n*, 85 Mich App at 447.

In addition, this Court has ruled against efforts to exclude adult foster care homes from residential areas by means of restrictive covenants and deed restrictions. See e.g. *City of Livonia*, 423 Mich, 466, 527-529 (1985); *Craig v Bossenbery*, 134 Mich App 543, 553; 351 NW2d 596 (1984) (holding that a restrictive covenant defining "family" in a way that barred placement in the subdivision of a small group home for the continuous care of six or fewer intellectually disabled adults was unenforceable as violative of public policy); *McMillian v*

---

[5] The Legislature added § 16a to the County Rural Zoning Enabling Act, MCL 125.216a, § 16a to the Township Rural Zoning Act, MCL 125.286a, and § 3b to the City and Village Zoning Act, MCL 125.583b. The Legislature repealed and replaced these statutes with 2006 PA 110, effective December 28, 2007, MCL 125.3101 *et seq*. MCL 125.3206 provides that state licensed residential facilities, which includes certain adult foster care facilities, "shall be considered a residential use of property for the purposes of zoning and a permitted use in all residential zones . . . ."

*Iserman*, 120 Mich App 785, 793-794; 327 NW2d 559 (1982) (opining in dicta that an amended deed restriction prohibiting use of the property for a state-licensed group residential facility for adults was unenforceable on public policy grounds, citing Const 1963, art 8. § 8); *Malcolm*, 95 Mich App 132 (1980) (see footnote 2, earlier).

Michigan's public policy of supporting "the movement toward deinstitutionalization and community placement of adults requiring foster care" *City of Livonia*, 423 Mich at 480, is expressed in statutes and court decisions. It is further supported by the constitutional mandate to foster and support "[i]nstitutions, programs and services for the care, treatment, education, or rehabilitation of those inhabitants who are physically, mentally or otherwise seriously disabled." Const 1963, art 8, § 8. Given Michigan's relevant public policy, our Supreme Court's reasoning and decision in *City of Livonia*, and the significant factual distinctions between *City of Livonia* and *Terrien*, we conclude that the trial court correctly determined that defendants were entitled to summary disposition.

This is not to say that restrictive covenants or deed restrictions can never work to bar operation of an adult foster care facility.[6] See e.g., *Jayno Hts Landowners Ass'n*, 85 Mich App 443 (1978) (holding that where a property owner leased his home to others, who then used the home as an adult foster care facility, the restrictive covenant limiting occupation of the residence to one single-family unit was enforceable). We recognize that "[r]estrictions for residence purposes are particularly favored by public policy and are valuable property rights," and that "[r]estrictions which are clear on their face, reasonable in scope, and do not violate public policy" are to be upheld. *City of Livonia*, 423 Mich at 525. However, for the reasons stated above, we apply with caution the principle that contracts in contravention of public policy are not enforceable, and affirm the trial court's grant of summary disposition to defendants. Given the disposition of this issue, we need not consider whether the trial court erred in denying plaintiffs' motion for a permanent injunction against operation of the adult foster care facility.[7]

---

[6] Nor is it to say that the operation of some other business out of the subject property would not violate the prohibition against conducting business enterprise. Plaintiffs mention more than once in their brief to this Court that several other business entities are "housed" at the subject property, but do not allege that Counts is conducting business through these entities. Thus, whether the "housing" of other business entities at the subject property violates the covenant prohibiting the conduct of business enterprises is not before us.

[7] We also decline to address plaintiffs' allegations that the operation of Hummingbird Meadows has increased traffic in the subdivision. Plaintiffs base their claim for relief not on any damage caused by the alleged increase in traffic, but on their argument that operation of the adult foster care family home violates Pine Valley's prohibition on business enterprises, which argument we have rejected.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause