MALCOLM v SHAMIE

Docket No. 43548. Submitted November 15, 1979, at Detroit.—Decided
    January 23, 1980.
        Douglas R. and Yorna L. Malcolm, Frederick and Ethyl A.
        Hofmann, Victor F. and Angeline M. Decoster and Irwin R. and
        Fay Fedorko, owners of certain St. Clair Shores property sub-
        ject to a deed restriction restricting the buildings on the lots to
        one single-family dwelling and a garage, filed suit against
        George and Tatinia Shamie, owners of other property subject to
        the same restriction, and John and Jeryl Wagner, lessees of the
        Shamie property, to enjoin the use of the property as an adult
        foster care facility for five mentally retarded adult women. The
        Macomb Circuit Court, Kenneth N. Sanborn, J., granted defen-
        dants' motion for summary judgment. Plaintiffs appeal. *Held:*

        Five mentally retarded women permanently living with a
        foster parent in an environment therapeutically designed to
        emulate a more conventional· family environment should be
        considered a "family", and such use of a property should be
        considered an appropriate family residential use.
            Affirmed.

1. MENTAL HEALTH — PUBLIC POLICY — CARE AND TREATMENT OF
    MENTALLY HANDICAPPED.
        It is the settled public policy of Michigan to promote the develop-
        ment and maintenance of quality programs and facilities for
        the care and treatment of the mentally handicapped.

2. COVENANTS — BUILDING RESTRICTIONS — PROPERTY — ENFORCE-
    MENT OF RESTRICTIVE COVENANTS — INTERPRETATION. OF RE-
    STRICTIVE COVENANTS.
        Restrictive covenants constitute valuable property rights, and it
        has been the policy of the judiciary to protect property owners
        who have complied with the restrictions from violations of the
        covenants by others.

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur 2d, Incompetent Persons § 31.
[2] 20 Am Jur 2d, Covenants § 185 *et seq.*
[3] 20 Am Jur 2d, Covenants §§ 196, 216.

3. WORDS AND PHRASES — FAMILY.

> The word "family" is one of great flexibility; five mentally re-
> tarded women permanently living with a foster parent in an
> environment therapeutically designed to emulate a more con-
> ventional family environment should be considered a "family",
> and such use of a property should be considered an appropriate
> family residential use.

*Milmet, Vecchio, Kennedy & Carnago, P.C.* (by *Donald E. Schuster),* for plaintiffs.

*Don R. Berchback (Michael J. Kiley* and *William J. Campbell,* of counsel), for defendants.

Before: R. B. BURNS, P.J., and M. F. CAVANAGH and D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, JR., J. Plaintiffs appeal as of right the trial court's order granting defendants' motion for summary judgment. In granting that motion, the court allowed five mentally retarded adult women to continue living in their supervised home in St. Clair Shores. This is not a half-way house, rather it is a permanent residence intended to allow these developmentally disabled women to lead fuller and more normalized lives in the community than would be possible in an institution.

Plaintiffs' attempt to enjoin the establishment of the Foster Care Center is premised upon the following restrictive covenant:

> "(1) No structures or buildings shall be erected, al-
> tered, placed or permitted to remain in any of the lots
> numbered 37 to 56 inclusive, 73 to 94 inclusive, 167 to
> 188 inclusive, and 203 to 224 inclusive, other than one
> detached single family dwelling not to exceed two sto-
> ries in height and a private garage for not more than 2
> cars."

The subject premises are included with the "73 to 94 inclusive" class.

Each of the parties have fundamentally relied upon a given, recent Court of Appeals decision involving a similar type situation in which a deed restriction was interpreted. Plaintiffs rely upon *Jayno Heights Landowners Ass'n v Preston*, 85 Mich App 443, 445; 271 NW2d 268 (1978). Defendants rely upon *Bellarmine Hills Ass'n v The Residential Systems Co*, 84 Mich App 554, 557, n 3; 269 NW2d 673 (1978). In distinguishing the two cases we must examine their restrictive covenants. In *Bellarmine, supra*, it reads:

"RESIDENTIAL LOTS. All lots in said subdivision shall be known and described as residential lots. No structure shall be erected, altered, placed or permitted to remain on any residential lot other than one single private family dwelling with attached private garage for not less than two (2) cars, except as herein otherwise provided."

The restrictive covenant in *Jayno Heights, supra*, provides that:

"Jayno Heights Subdivision No. 1, shall be used for residential purposes exclusively, and no more than one single family dwelling house, with usual outbuilding for use in connection therewith, shall be erected or constructed on any lot in said subdivision and *any residence so constructed shall be occupied by not more than one single family unit.*" (Emphasis supplied.)

A comparison of the three cited restrictive covenants discloses that the *Bellarmine* covenant and the covenant in the instant case are virtually indistinguishable. Conversely, the covenant in *Jayno, supra*, not only covered the type of dwelling, but it also regulated who could live in such a

dwelling. The majority of the *Jayno* Court emphasized the distinction, particularly in light of the fact that the dwelling at issue, an adult foster care facility, was being used for commercial purposes. In the instant case, defendants operate within a nonprofit corporation, receiving some financial support from governmental sources.

*Bellarmine, supra,* recognized that cases of this nature present a confrontation between two basic public policies. First, restrictive covenants are valuable property rights subject to judicial protection against those who would violate them. Second, this state encourages the maintenance and development of quality programs and facilities for the care and treatment of the mentally handicapped. That Court held that four mentally retarded children and a foster parent living in the residence on a permanent basis were a family in the eyes of the law. Therefore, defendants, as in the instant case, were entitled to summary judgment as a matter of law.

Another illustrative case is *Boston-Edison Protective Ass'n v The Paulist Fathers,* 306 Mich 253, 259; 10 NW2d 847 (1943), in which a deed restriction provided that the lots were not to be used "except for a single-dwelling house and dwelling house purposes only". The home was occupied by five priests and their two servants. The Court held it unreasonable to limit the use of a one-family dwelling to those who are members of a single family related within the degrees of consanguinity or affinity:

"The word 'family' is one of great flexibility. In *Carmichael v. Northwestern Mutual Benefit Ass'n,* 51 Mich. 494 [1883], it was said by Chief Justice GRAVES, speaking for the court:

" 'Now this word "family," contained in the statute, is

an expression of great flexibility. It is applied in many ways. It may mean the husband and wife having no children and living alone together, or it may mean children, or wife and children, or blood relatives, or any group constituting a distinct domestic or social body. It is often used to denote a small select corps attached to an army chief, and has even been extended to whole sects, as in the case of the shakers.

" 'We discover nothing in the statute implying a narrow sense, and we should not be inclined to attribute one where the result would cause injustice.' "

Five mentally retarded women living with a foster parent in an environment therapeutically designed to emulate a more conventional family environment should also be considered a family, and such use of the property, an appropriate family residential use. The residents are more than a group of unrelated individuals sharing a common roof. They do not have natural families on which to rely, and, due to their unique circumstances, it is unlikely that these women will ever rejoin their parents or marry and form independent families. The substitute family provided by the group home allows the residents to lead more normal and meaningful lives within the community than would be feasible were they institutionalized. This Court weighed the importance of normalization through community based services for retarded individuals in *Bellarmine, supra.* The only difference between the two cases is that the residents in the instant case are adults. The public policy arguments of *Bellarmine* apply equally to all retarded individuals regardless of chronological age.

Proof that the Legislature intended to provide adequate, regulated and safe foster care facilities in residential neighborhoods is found in MCL 125.286a(2); MSA 5.2963(16a)(2), which states:

"In order to implement the policy of this state that persons in need of community residential care shall not be excluded by zoning from the benefits of normal residential surroundings, a state licensed residential facility providing supervision or care, or both, to 6 or less persons shall be considered a residential use of property for the purposes of zoning and a permitted use in all residential zones, including those zoned for single family dwellings, and shall not be subject to a special use or conditional use permit or procedure different from those required for other dwellings of similar density in the same zone."

These women should be construed as a family for purposes of the restrictive covenant. Further support for this holding is found in Const 1963, art 8, § 8, which provides that:

"Institutions, programs and services for the care, treatment, education or rehabilitation of those inhabitants who are physically, mentally or otherwise seriously handicapped shall always be fostered and supported."

It is most important to note that this decision is to be narrowly construed. The facts in the case at bar do not connote a temporary living arrangement. It is the firm understanding of this Court that the inhabitants of the foster care facility will live there on a permanent, year-round basis and will, other than a blood relationship, comprise all the elements of a family.

It has been the policy of our judiciary to protect property owners who have complied with the restrictions from violations of the covenants by others. Covenants of restriction, especially those pertaining to residential use, preserve not only monetary value, but aesthetic characteristics considered to be essential constituents of a family environ-

ment. Consequently failure to give complete effect to restricted covenants in accordance with their import can work a great injustice to the property owners. *Wood v Blancke,* 304 Mich 283, 287-288; 8 NW2d 67 (1943).

We find that the property in the instant case is restricted to single family use and that the trial court was correct in concluding that the women constitute a "family", as perceived in the eyes of the law. In reaching this result, we emphasize that the balance between the competing policies in this case is extremely close. Our holding is limited to cases with the same or very similar factual situations.

Affirmed. No costs, a public question involved.