BENNETTS v STATE EMPLOYEES RETIREMENT BOARD

Docket No. 45422. Submitted January 4, 1980, at Lansing.—Decided February 21, 1980.

Walter E. Bennetts was employed by the Gogebic County Road Commission for over 21 years. Four years later he was reemployed by Gogebic County as director of the county welfare department where he served for over eight years or until the county welfare department was merged into the State Department of Social Services by law. Thereafter he was with the State Department of Social Services until his retirement in 1976. Upon retirement, Bennetts was granted a retirement allowance from the State Employees' Retirement System for the eleven plus years he had served with the State Department of Social Services. Bennetts was granted a hearing under the Administrative Procedures Act. The administrative law judge ruled Bennetts was not entitled to any credit for service with the road commission or the county department of social welfare. Bennetts appealed to the Ingham Circuit Court, Thomas L. Brown, J. The court modified the administrative order by giving credit for plaintiff's service with the county welfare department. Credit for plaintiff's prior service with the county road commission was denied on grounds that the Social Welfare Act which merged employees of a county department of social services with the state department of social services was not ambiguous. The merger statute provides that a retired member shall receive retirement system service credit for the period of service under the county department of social services if the employee withdraws all rights in and to any pension

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes §§ 145, 146, 194.
[2] 73 Am Jur 2d, Statutes §§ 155-160.
[3] 2 Am Jur 2d, Administrative Law § 241.
Supreme Court's view as to weight and effect to be given, on subsequent judicial construction to prior administrative construction of statute. 39 L Ed 2d 942.
[4] 73 Am Jur 2d, Statutes §§ 154, 274-276.
[5] 73 Am Jur 2d, Statutes §§ 204-208.
[6] 73 Am Jur 2d, Statutes §§ 260, 263, 264.

benefit he may be eligible to receive under a county pension plan. As a result of the trial court's decision, plaintiff is receiving monthly retirement benefits from both the county and the state for a combined monthly benefit of $377.26. He would receive $957.04 if all of his county service could be credited to the state retirement system. He would receive some $850-900 per month from the county if the merger statute had not been enacted. Plaintiff appeals. The question presented on appeal is whether plaintiff is entitled to receive credit for retirement purposes for all his service with the county, or whether only his service in the county welfare office may be credited. *Held:*

1. The merger statute, literally read, requires plaintiff to surrender all rights to over 30 years of earned pension credit in order to gain 8-3/4 years of pension credit. The two statutory provisions are sufficiently ambiguous and incompatible to raise questions as to what the Legislature really intended. Extrinsic aids, which show the purpose and object of a bill, may be employed by courts to determine legislative intent. A memorandum from the State Personnel Director to the Governor and analyses prepared for legislative guidance clearly indicate that any employee involved in the county-state merger should receive credit for all of his or her service rendered to the county.

2. Consistent application of the merger statute and amendments which do not indicate that defendant's interpretation was in error does not restrict judicial intervention. Nothing in the testimony or record shows that the merger statute has ever been formally construed on the issue presented. Therefore, contrary to defendant's assertion, the Court of Appeals is not bound to give respectful consideration to any longstanding administrative interpretation of the statute.

3. Statutes are not to be interpreted so as to cause a hardship or injustice if it can be avoided. A decision which deprives plaintiff of roughly 50% of his monthly benefits does cause an unnecessary hardship.

Reversed.

1. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT — PURPOSE AND OBJECTIVES.

Judicial construction is precluded where the language of a statute is plain and unambiguous; however, where a statute is found subject to two or more interpretations, legislative intent may be found by looking to the purpose and objectives sought to be accomplished.

2. Statutes — Judicial Construction — Legislative Intent — Extrinsic Aids.

Legislative intent may be determined by looking to extrinsic aids showing the object sought to be achieved and the problem to which the bill addresses itself.

3. Statutes — Judicial Construction — Administrative Interpretation.

Longstanding construction given to a statute by those entrusted to administer it is entitled to great respect.

4. Statutes — Judicial Construction — Spirit and Purpose — Strict Letter.

The spirit and purpose of a statute must prevail over its strict letter.

5. Statutes — Judicial Construction — Literal Interpretation — Legislative Intent.

A statute should not be interpreted literally where a literal interpretation leads to a result clearly contrary to the legislative intent.

6. Statutes — Judicial Construction — Hardship or Injustice.

Statutes should not be interpreted so as to cause a hardship or injustice if it can be avoided.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *David E. S. Marvin),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Felix E. League,* Assistant Attorney General, for defendant.

Before: ALLEN, P.J., and V. J. BRENNAN and MacKenzie, JJ.

PER CURIAM. In this appeal we are asked to interpret 1976 PA 227[1] relating to retirement options for those county welfare department employees who became state employees when the county welfare system was merged into the state system.[2]

---

[1] MCL 38.17c; MSA 3.981(17c).

[2] Merger was mandated by 1965 PA 401; MCL 400.1; MSA 16.401.

The precise question raised is whether such an employee is entitled to receive credit for retirement purposes for *all* his service with the county, or whether only his service in the county welfare office may be credited. In the case before us, plaintiff was employed by the Gogebic County Road Commission for 21 years, 9 months and 21 days. Four years later he was reemployed by Gogebic County as director of the county welfare department where he served 8 years, 8 months and 21 days until the department was merged into the State Department of Social Services. Thereafter, plaintiff served 11 years 3 months and 19 days as an employee of the State Department of Social Services until his retirement July 10, 1976.[3]

Upon retirement, plaintiff was granted a retirement allowance from the State Employees' Retirement System for only his 11 years, 3 months and 19 days served with the State Department of Social Services. Plaintiff was granted a hearing under the Administrative Procedures Act at the conclusion of which the administrative law judge ruled plaintiff was not entitled to any credit for service with the county road commission or the county department of social welfare. Appeal was taken to the Ingham County Circuit Court which, after receiving briefs from both parties and hearing oral argument, issued an opinion April 20, 1976, modifying the board's order by giving credit for plaintiff's service with the county welfare department. Credit for plaintiff's prior service with the county road commission was denied on grounds that the statute was not ambiguous.

"The petitioner urges the court to find the language

---

[3] Plaintiff's service by dates is: June 1, 1930-March 31, 1952, Gogebic County Road Commission. July 1, 1956-March 21, 1965, Gogebic County Welfare Department. March 21, 1965-July 10, 1976, State of Michigan Department of Social Services.

of 1976 PA 227 ambiguous and to then construe the statute in a manner to allow a retiree who was merged with the state system by virtue of the Social Welfare. Act, 1965 PA 401, MCLA 400.1 et seq.; MSA 16.401, et seq., to claim service credit for previous years of county employment in departments other than the county department of social services.

\* \* \*

"However, the statute which states that members who have been merged with the state system 'shall receive retirement system service credit for the period of service under the county department of social services', cannot be ignored. The fact that the statute requires a member to make an election to 'withdraw all rights in and to *any* pension benefit he may be eligible to receive under a county pension plan' does not necessarily give rise to the conclusion that the wording of the statute was an oversight and not reflective of the legislature's true intent."

As a result of the trial court's opinion, plaintiff is now receiving $194.51 per month retirement benefits from the state and $182.75 per month retirement benefits from Gogebic County, a combined monthly benefit of $377.26. But if all of his county service could be credited, plaintiff would be entitled to $957.04 per month retirement benefits. Or to state the problem another way—if plaintiff's service with Gogebic County had not been interrupted by merger pursuant to 1965 PA 401 plaintiff would be drawing retirement benefits from Gogebic County of some $850-$900 per month.[4]

[4] The $850-$900 figure was given in response to a question by the court at oral argument. Because county salaries are generally lower than state salaries, and because retirement benefits are based on a percentage of the salary received during the last years worked, plaintiff's "final average compensation" would be somewhat less had he remained a county employee rather than being a state employee. During his service with the county, plaintiff was paying into the county retirement fund.

From an order entered May 16, 1979, formalizing the trial court's opinion, plaintiff appeals of right.

1976 PA 227, immediately effective August 4, 1976, reads:

"Sec. 17c. Any member retired on or after January 1, 1975 who is an employee of a county department of social services who was merged and placed under the employment of the state department of social services pursuant to Act No. 280 of the Public Acts of 1939, as amended, being sections 400.1 to 400.122 of the Michigan Compiled Laws, <u>shall receive retirement system service credit for the period of service under the county department of social services</u> if the employee withdraws all rights in and to any pension benefit he may be eligible to receive under a county pension plan, and pays into the state employees' retirement system a contribution of $600.00 for each year of service claimed."

This Court is struck by the inconsistency between the language underscored in solid lines and the language underscored in broken lines above. The two provisions are incompatible. If one is to receive credit only for service while employed with the county social services department, why should one give up not only credits while so employed but in addition surrender credits while employed in other county departments. The statute, literally read, requires plaintiff to surrender all rights to 30-1/2 years of earned pension credit in order to gain 8-3/4 years pension credit. Given the background in which the bill was drafted, is that what the Legislature really intended? We think not. The incompatibility of the two provisions is sufficiently great to raise questions as to what the Legislature really intended. Thus, the statute is ambiguous

and is distinguishable from the situation in *Curtis v Michigan Public School Employees Retirement System,* 10 Mich App 508; 159 NW2d 889 (1968), a case upon which defendant strongly relies.[5]

Where the language of a statute is plain and unambiguous, judicial construction thereof is precluded. *Lansing v Lansing Twp,* 356 Mich 641, 648-649; 97 NW2d 804 (1959). But where, as here, the statute is found subject to two or more interpretations, legislative intent may be found by looking to the purpose and objectives sought to be accomplished. *Davis v Board of Education of School District for The City of River Rouge,* 73 Mich App 358, 363; 251 NW2d 585 (1977). Legislative intent may be determined by looking to extrinsic aids showing the object sought to be achieved and the problem to which the bill addresses itself. *Consumers Power Co v Big Prairie Twp,* 81 Mich App 120, 156-157; 265 NW2d 182 (1978). In the instant case, two extrinsic aids are supportive of the interpretation urged by plaintiff. A memorandum from Richard Ross, State Personnel Director, to Governor Milliken,[6] dated December 30, 1975, describes the bill's purpose as follows:

"1. What is the purpose of the bill?
"This bill amends the State Retirement Act to allow former county employees who were mandated into state service in the Department of Social Services the opportunity to purchase years of service credit *for each year of county service.* The employee must forfeit all rights

---

[5] In *Curtis, supra,* the Court adopted the literal interpretation of a statute pertaining to retirement for teachers in the out-state school system. The Court found that a similar statute pertaining to teacher retirement for the Detroit school system contained the exact language which plaintiff wanted liberally construed into the out-state statute. The Court held that because the Legislature used the language in one instance but did not do so in the other, the Legislature intended that there be a difference.

[6] Introduced in evidence as plaintiff's exhibit 5.

to any pension benefit they may be eligible to receive under a county pension plan." (Emphasis supplied.)

The second extrinsic aid indicative of the Legislature's intent are two bill analyses prepared for legislative guidance while the bill was being considered by the Legislature.[7]

"The Apparent Problem to Which the Bill Addresses Itself:

. "Under a 1965 amendment to the Social Welfare Act (Public Act 401 of 1965) which provided for the merger of county social service departments with the state Department of Social Services, many county employees were made state employees. However, no provision was made for the transference of retirement credit to the State Employees' Retirement System (where an ex-county employee was covered by a county plan), nor was provision made for the purchase of retirement credit by those ex-county employees who were not covered by a county plan prior to the merger. Many persons believe that legislation providing service credit for these employees is still needed and that it would be unfair *to continue denying them credit for the public service rendered to counties prior to the merger.*" (Emphasis supplied.)

"Argument For:

"The persons who would be affected by the bill are former county employees who were made state employees by law. In many cases, this transfer disrupted an employee's participation in a county pension plan, forcing him or her to become a member of the State Employees' Retirement System. It seems only fair to allow such a person to place *all of his/her contributions with 1 system and to receive his/her benefits from 1 source.* Other former county employees who were transferred to state employment by law were not covered by any plan prior to transfer. *The bill would allow them to receive credit for public service.*" (Emphasis supplied.)

---

[7] Introduced in evidence as plaintiff's exhibits 2 and 3.

It is readily transparent from the language emphasized above that the Legislature intended that any employee involved in the 1965 merger would receive credit for *all* of his or her service rendered to the county. The fact that all contributions were to be put in one system and credits earned from one source is *contra* to the interpretation placed on the statute by defendant. Defendant's interpretation results in two systems.

Having rejected what Justice Frankfurter described as "the tyranny of literalness", this Court looks to "the persuasive gloss of legislative history" to ascertain legislative intent. *United States v Witkovich,* 353 US 194, 199; 77 S Ct 779, 782; 1 L Ed 2d 765, 769 (1957). 1976 PA 227 was the legislative response to demands by the Michigan County Social Services Association for legislation correcting the inequity caused by the forced merger of the county welfare system into the state system. The inequity was the reduction in pension benefits which the employee could otherwise ultimately receive from the county had not the transfer been made.

For ten years following the merger, the association sponsored enactment of legislation which would remedy the problem. Walter Bennetts, plaintiff herein, was board member and treasurer of the Michigan County Social Services Association. It is inconceivable that the association or Mr. Bennetts would support legislation giving credit for only a portion of the employee's county service. Only by authorizing the employee to place all of his/her contributions and receive benefits from one source for all of the employee's county service would the act prevent the reduction in benefits necessarily resulting from splitting the employee's contribution between two pension systems. Of the

total number of employees working in the county social services departments when the merger occurred, only a very few had prior county service in a department other than the social services department.[8]

Thus, as a practical matter, the statutory mandate to withdraw "all rights in and to any pension benefit he may be eligible to receive under a county pension plan" corrects the inequity for all but the few employees with prior county service. The majority of the employees had no other benefits accrued. However, we perceive the legislative intent as encompassing *all* employees who in 1965 were employed in the county department of social services. The language mandating withdrawal of *all* rights to pension benefits to which the employee "may be eligible to receive under a county pension plan" persuades us that the Legislature intended to include all the county social services employees. Further, nothing in the history of the bill or in the legislative analysis even remotely suggests that an exception was intended for those few who had prior county service. What we suspect happened is that in the care taken when drafting the bill to include only county employees then working in the county welfare department and to exclude other county employees, inadvertently, language was used which excluded the very few county social service department employees who had prior service in another county department.

Defendant reminds us that its construction of § 17(c) has been consistently applied since the statute was enacted in 1976, and that though the

---

[8] At oral argument, plaintiff's counsel stated that "only a dozen or so" persons who were working for the county in the department of social welfare had, like plaintiff, prior county service. Defendant did not appear at oral argument.

act has been amended numerous times since then, at no time has the Legislature amended the statute to indicate that defendant's interpretation was in error. We recognize that the longstanding construction given a statute by those entrusted to administer it is entitled to great respect. *Board of Education of Oakland Schools v Superintendent of Public Instruction,* 401 Mich 37, 41; 257 NW2d 73 (1977). But nothing in the testimony or records in this case indicates the State Employees' Retirement Board has ever formally construed § 17(c) on the issue raised here. The chief sponsors of § 17(c), the Michigan County Social Services Association, know of no such case. Because so few employees outside of the City of Detroit had prior county service with another county department, the instant case may well be one of first impression. Thus, contrary to defendant's assertion, there has been no longstanding administrative interpretation to which this Court must give respectful consideration.

Finally, we note that well established rules of statutory construction support our decision herein. We have already observed that, because in most instances the county employees did not have prior work experience in another county department, the act in most instances fulfilled its purpose as literally interpreted. In a few instances, including the situation before us, the purpose and spirit of the statute was not fulfilled. It is a well established rule that the spirit and purpose of a statute must prevail over its strict letter. *Aikens v Dep't of Conservation,* 387 Mich 495, 499; 198 NW2d 304 (1972). We perceive the clear legislative intent as enabling employees to receive all their retirement benefits from one source. Courts may not interpret a statute literally if such interpretation would lead

to a result contrary to what the Legislature intended. *Higgins v Monroe Evening News,* 70 Mich App 407, 413; 245 NW2d 769 (1976). Lastly, statutes are not to be interpreted so as to cause a hardship or injustice, if it can be avoided. *Zawacki v Detroit Harvester Co,* 310 Mich 415, 420; 17 NW2d 234 (1945). The board's interpretation does cause a hardship to plaintiff because it deprives him of roughly 50% of the monthly benefits he would receive from the county had not the merger taken place, and deprives him of 50% of the benefits he would receive from the state by receiving benefits from one source.[9]

Reversed. No costs, a public question being involved.

---

[9] Since the statute intended benefits to be received from a single source, plaintiff may not retain the benefits already paid him under the county retirement system and also receive state payments under the statute as interpreted by this opinion.