LELAND ACRES HOMEOWNERS ASSOCIATION, INC v R T
PARTNERSHIP

Docket No. 48213. Submitted December 9, 1980, at Lansing.—Decided June 3, 1981.

R. T. Partnership built a house in Leland Acres Subdivision, Northfield Township, and leased it to Pyramid Human Services, Inc., which intended to use the house as a foster care facility for six mentally disabled persons. The Leland Acres Homeowners Association, Inc., brought an action for a declaratory judgment and injunction, claiming that a restrictive covenant applying to each home in the subdivision prevented the proposed use of the house. The covenant excluded buildings other than "a private dwelling house * * * designed and erected for occupation by a single private family". The Washtenaw Circuit Court, Patrick J. Conlin, J., granted summary judgment in favor of the plaintiff and enjoined the defendants from using the property as proposed. Defendant Pyramid appeals. *Held:*

By its terms, the covenant applies to the type of structure to be built and not the use of the dwelling. The nature of the operation is nonprofit rather than commercial. Further, the residents of the home would constitute a "family" under previous holdings of the Court of Appeals.

Reversed and remanded.

COVENANTS — FOSTER CARE FACILITIES.

Three factors are considered in deciding whether the use of a house as a foster care facility for physically or mentally disabled persons violates a restrictive covenant in the deed to the property limiting dwellings to those "designed and erected for occupation by a single private family": (1) the specific language of the covenant, (2) the nature of the operation with particular regard to whether it is commercial or nonprofit, and (3) the basis of the affiliation of the residents of the home.

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 182
What constitutes a "family" within meaning of zoning regulation or restrictive covenant. 71 ALR3d 693.

*Hooper, Hathaway, Price, Beuche & Wallace* (by *Charles W. Borgsdorf),* for plaintiff.

*Josephson, Fink, Sedo & Darnton,* for Pyramid Human Services, Inc.

Amicus Curiae:

Michigan Protection & Advocacy Service for Developmentally Disabled Citizens (by *Michael J. Kiley).*

Before: T. M. BURNS, P.J., and ALLEN and D. F. WALSH, JJ.

T. M. BURNS, P.J. Defendant Pyramid Human Services, Inc., appeals as of right a lower court order granting summary judgment in favor of plaintiff and permanently enjoining defendants from using a house located in Leland Acres Subdivision as a foster care facility for six mentally disabled persons. We reverse.

Plaintiff is a Michigan nonprofit corporation whose members are the residents in the Leland Acres Subdivision in Northfield Township, Washtenaw County. Defendant R. T. Partnership is a Michigan limited partnership which purchased a lot in the Leland Acres Subdivision, built a house on it and leased it to defendant Pyramid Human Services, a Michigan nonprofit charitable corporation that operates foster care facilities for developmentally disabled individuals at several locations.

Defendants proposed to place six individuals between the ages of 17 and 35 in the subdivision home. Their treatment and supervision would be provided by a professional staff on a 24-hour basis.

The building and use restrictions that apply to

each home in Leland Acres Subdivision, including the one in question, state:

"Each lot will be used for providing residential purposes only and no house trailers or building of any kind whatsoever shall be erected, re-erected, moved or maintained thereon except a private dwelling house. Such dwelling shall be designed and erected for occupation by a single private family and a private attached two-car garage for the sole use of the respective owner or occupant of the lot upon which such garage is erected * * *."

The single issue raised in this appeal is whether a valid restrictive covenant excluding buildings other than single family residences from a subdivision proscribes the use of a leased subdivision house by a nonprofit corporation for use as a group home by six developmentally disabled adults supervised by a professional staff.

Consideration of this issue necessitates our review of three recent opinions of this Court that have interpreted such restrictive covenants in nearly identical situations.

In *Bellarmine Hills Ass'n v The Residential Systems Co,* 84 Mich App 554, 556-557; 269 NW2d 673 (1978), this Court reversed a lower court injunction that enjoined the defendant in that case from using a subdivision house as a home for six or fewer retarded children and a foster parent. The defendant was a charitable organization that had leased the subdivision home from a private owner. As described by this Court in its opinion, the defendant was acting pursuant to the following plan:

"The facility with which this litigation is concerned is licensed by the Department of Social Services pursuant

to the child care organizations act. At the time this action was initiated, four mentally retarded children and one foster parent lived in the residence on a permanent basis. Other personnel would visit the home during the day to render care and treatment to the children. The children also attend special classes at the local public schools.

"At such time as a child has sufficiently responded to treatment that he can return to the care of his parents, his residency at the facility terminates, and another child is assigned to the home by the Department of Social Services."

The restrictive covenant in *Bellarmine* provided:

"*RESIDENTIAL LOTS.* All lots in said subdivision shall be known and described as. residential lots. No structure shall be erected, altered, placed or permitted to remain on any residential lot other than one single private family dwelling with attached private garage for not less than two (2) cars, except as herein otherwise provided." 84 Mich App 554, 557, fn 3.

In considering the problem before it, the Court accepted the argument that the language of this restrictive covenant, which by its terms prohibited only the erection in the subdivision of anything other than a single family dwelling, also limited the dwelling to use by a single family. Nonetheless, the Court found in favor of the defendant on the grounds that the proposed use was strongly favored by public policy and that the structure of the affiliation of the proposed residents of the home, a foster parent and six or fewer mentally disabled children, was legally equivalent to that of a biological family.

Soon after *Bellarmine* was decided, this Court with one dissent upheld a lower court grant of summary judgment enjoining the use of a house as

a foster care home by six elderly women in violation of a restrictive covenant. In that case, *Jayno Heights Landowners Ass'n v Preston,* 85 Mich App 443, 445; 271 NW2d 268 (1978), the restrictive covenant stated:

> "Jayno Heights Subdivision No. 1, shall be used for residential purposes exclusively, and no more than one single family dwelling house, with usual outbuilding for use in connection therewith, shall be erected or constructed on any lot in said subdivision and any residence so constructed shall be occupied by not more than one single family unit."

One defendant in the *Jayno Heights* case had built a house and leased it to two other defendants who proposed to have it licensed under the Adult Foster Care Facility Licensing Act, MCL 331.681 *et seq.;* MSA 16.610(1) *et seq.,* and used as a home for elderly women. The Court found that the restrictive covenant before it prescribed not only the type of structure that could be built in the subdivision but also the type of persons who could occupy the structure.

In this respect, the Court distinguished the covenant before it from that considered by the Michigan Supreme Court in *Boston-Edison Protective Ass'n v The Paulist Fathers, Inc,* 306 Mich 253, 256; 10 NW2d 847 (1943), which provided that residents "shall not use or occupy said lots except for a single dwelling house and dwelling house purposes only". The Court found that the restrictive covenant in the *Boston-Edison* case did not concern itself with who should occupy a dwelling; it limited only the type of dwelling that could be constructed. Further, the *Jayno Heights* Court specifically noted that the house in the case before

it was being used for a commercial purpose while that in the *Boston-Edison* case was not.

The majority opinion in *Jayno Heights* did not consider the prior opinion of this Court in *Bellarmine.* However, the dissenting *Jayno Heights* opinion did consider *Bellarmine* and, relying principally upon it, the dissent would have held that the group of six elderly women was a "family" for purposes of the restrictive covenant and that enforcement of the covenant would violate public policy.

The last opinion of this Court to consider this issue was *Malcolm v Shamie,* 95 Mich App 132, 133; 290 NW2d 101 (1980). In that case, plaintiffs sued to enjoin five mentally retarded adult women from living in a supervised home in violation of a restrictive covenant that provided:

> "No structures or buildings shall be erected, altered, placed or permitted to remain in any of the lots numbered 37 to 56 inclusive, 73 to 94 inclusive, 167 to 188 inclusive, and 203 to 224 inclusive, other than one detached single family dwelling not to exceed two stories in height and a private garage for not more than 2 cars."

Comparing the factual situation before it to that in *Bellarmine* and *Jayno Heights,* the *Malcolm* Court held that the covenant before it specifically applied to the type of dwelling and not to who could live in such dwelling. The Court noted that the defendant before it operated a nonprofit corporation, unlike the situation in *Jayno Heights,* and that:

> "Five mentally retarded women living with a foster parent in an environment therapeutically designed to emulate a more conventional family environment

should also be considered a family, and such use of the property, an appropriate family residential use. The residents are more than a group of unrelated individuals sharing a common roof. They do not have natural families on which to rely, and, due to their unique circumstances, it is unlikely that these women will ever rejoin their parents or marry and form independent families. The substitute family provided by the group home allows the residents to lead more normal and meaningful lives within the community than would be feasible were they institutionalized. This Court weighed the importance of normalization through community based services for retarded individuals in *Bellarmine, supra.* The only difference between the two cases is that the residents in the instant case are adults. The public policy arguments of *Bellarmine* apply equally to all retarded individuals regardless of chronological age." 95 Mich App 132, 136.

Reflecting upon these three cases, we glean three factors that were considered by the Court in each of them. First, in each opinion the Court considered the specific language of the covenant. Second, it considered the nature of the operation with particular regard as to whether it was commercial or nonprofit. Finally, the Court in each case considered the basis of the affiliation of the residents in the home.

In the instant case, the specific language of the restrictive covenant is more like that in *Bellarmine* and *Malcolm* than that in *Jayno Heights.* That is, the present restrictive covenant states that "[s]uch dwelling shall be designed and erected for occupation by a single private family". Thus, by its terms, the covenant applies to the type of structure and not the use of the dwelling. In this respect, it is unlike the covenant in *Jayno Heights,* which provided "any residence so constructed shall be occupied by not more than one single family

unit". 85 Mich App 443, 445. This factor then weighs in favor of defendants.

Similarly, the second factor also dictates in favor of defendants. The operation of the home in this case is to be similar to that in *Bellarmine* and appears to be like that in *Malcolm* in that the present home would be operated by a nonprofit, charitable corporation. The operation of the home in *Jayno Heights* can be distinguished in that it was commercial in nature.

Finally, the basis of affiliation in this case cannot be distinguished from that in *Malcolm* which involved a substantially identical home for six or fewer developmentally disabled adults. Although a residential foster parent was present in the home in *Malcolm,* and it is not clear from the facts of the case at bar whether one would be present in the instant home, we do not deem this distinction to be a significant one. The precept that a parent is the essence of a family does not seem to have been of any importance in either *Bellarmine* or *Malcolm.* In any event, 24-hour supervision is to be provided in the instant home.

Thus, comparing the facts of this case to those in *Bellarmine, Jayno Heights* and *Malcolm,* we hold that they more closely resemble *Bellarmine* and *Malcolm.* The present deed restriction prescribes only the building of a single family dwelling in the subdivision, it does not limit its use. However, be that as it may, the residents of defendants' home would constitute "a family" under the holdings of this Court in *Bellarmine* and *Malcolm.*

The lower court order granting plaintiff's motion for summary judgment is vacated. This cause is reversed and remanded and the lower court is instructed to enter an order granting defendants' motion for summary judgment.