ERICKSON v DEPARTMENT OF SOCIAL SERVICES

Docket No. 55543. Submitted May 7, 1981, at Lansing.—Decided
    August 5, 1981. Leave to appeal applied for.

    Jack G. Erickson, Charles S. Hulbert, Marla K. Morse, Donna L.
        Kilcherman, Garfield Township, and the Garfield Township
        Board of Supervisors brought an action against the Department
        of Social Services, Robert Wilson, director of Grand Traverse
        County Social Services, Richard Knapp, the director of Trav-
        erse House, Michael Gravlin and Nell Gravlin, seeking an
        injunction to restrain defendants from establishing a child care
        facility in a single-family neighborhood. Grand Traverse Circuit
        Court, Charles M. Forster, J., granted a permanent injunction
        on the ground that the child care organizations act did not
        permit the licensing of state operated residential child caring
        facilities, and thus defendants could not avail themselves of the
        residential use exception in the Township Rural Zoning Act to
        meet local zoning restrictions. Defendants appeal, alleging that
        state operated facilities which are required to be "evaluated
        and approved" should be included in the zoning act's definition
        of residential use. *Held:*

        The trial court properly enjoined defendants. The term "li-
        cense" as used in the child care organizations act is unambigu-
        ous and is not a synonym for the term "approved" as used in
        the same act. The Township Rural Zoning Act applies to
        licensed facilities, and, since defendants' facility is not "li-
        censed" it does not come under the residential use exception of
        the act and is in violation of local zoning restrictions.

        Affirmed.

        BRONSON, J., dissented. He would hold that the term "li-
        cense" as used in the child care organizations act is ambiguous,
        and, because an examination of the provisions of the act as a
        whole reveals no significant distinctions between private and

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 194, 196.
[2, 6] 73 Am Jur 2d, Statutes §§ 155-160.
[3, 7] 73 Am Jur 2d, Statutes §§ 204-208, 254.
[4] 79 Am Jur 2d, Welfare Laws § 25.
[5, 7] 82 Am Jur 2d, Zoning and Planning § 172.

government operated child care facilities, the word should not be given a literal construction but should be construed so as to apply the residential use exception of the Township Rural Zoning Act to defendants. He would reverse.

OPINION OF THE COURT

1. APPEAL — STATUTES — JUDICIAL CONSTRUCTION.

The Court of Appeals is governed by traditional rules of statutory construction; where a statute is unambiguous on its face, further interpretation or construction will be avoided, but where ambiguity exists, it is the duty of the court to give effect to the legislative intent upon enactment.

2. STATUTES — AMBIGUOUS STATUTES — JUDICIAL CONSTRUCTION.

A court, in resolving a perceived ambiguity in a statute, should look to the object of the statute and the evil or mischief which it is designed to remedy and apply a reasonable construction of the statute which best accomplishes the purpose of the statute.

3. STATUTES — AMBIGUOUS STATUTES — JUDICIAL CONSTRUCTION.

Ambiguous statutes are interpreted by a court as a whole and construed so as to give effect to each provision and to produce an harmonious and consistent result; specific words in a statute are assigned their ordinary meaning unless a different interpretation is indicated (MCL 8.3a; MSA 2.212[1]).

4. LICENSES — PUBLIC CHILD CARE FACILITIES — PRIVATE CHILD CARE FACILITIES — WORDS AND PHRASES — STATUTES.

The meaning of the word "licensed" as used in that section of the child care organizations act which requires licensing of private child care facilities is unambiguous on its face and is not synonymous with the word "approved" in another section of the act requiring the evaluation and approval of government operated child care facilities (MCL 722.115[1], 722.116; MSA 25.358[15][1], 25.353[16]).

5. ZONING — LICENSES — PUBLIC CHILD CARE FACILITIES — PRIVATE CHILD CARE FACILITIES — STATUTES.

That section of the Township Rural Zoning Act which provides that use of a structure constructed for residential purposes to provide supervision and care for six persons or less who are in need of community residential care by a state licensed private facility will be considered a residential use consistent with zoning restrictions for single-family dwellings does not apply to approved but unlicensed government run facilities (MCL

125.286a, 722.115[1], 722.116; MSA 5.2963[16a], 25.358[15][1], 25.358[16]).

DISSENT BY BRONSON, J.

6. STATUTES — JUDICIAL CONSTRUCTION.

    *A court, in construing the meaning of a statute, may depart from a literal application of the words of the statute where such a literal construction would produce a result manifestly inconsistent with the policies sought to be effected by the statute.*

7. ZONING — LICENSES — JUDICIAL CONSTRUCTION — PUBLIC CHILD
    CARE FACILITIES — PRIVATE CHILD CARE FACILITIES — STATUTES.

    *The word "licensed" as used in the child care organizations act is ambiguous, and because an examination of the provisions of the act as a whole discloses no significant distinctions between private and government operated child care facilities the word should not be given a literal construction, but should be construed so as to permit both private and government operated child care facilities to be included in the definition of residential use provided in the Township Rural Zoning Act (MCL 125.286a, 722.115[1], 722.116; MSA 5.2963[16a], 25.358[15][1], 25.358[16]).*

*Thompson, Zirnhelt, Bowron & Senger, P.C.* (by *Philip R. Rosi),* for plaintiffs Erickson, Hulbert, Morse and Kilcherman.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija, Bernard Rosner,* and *Constance J. Hobson,* Assistants Attorney General, for defendants Department of Social Services, Wilson, and Knapp.

Before: M. J. KELLY, P.J., and BRONSON and R. M. DANIELS,* JJ.

M. J. KELLY, P.J. Plaintiffs initiated this action, seeking an injunction to restrain defendants from establishing a certain house as a child caring institution pursuant to MCL 722.111 *et seq.;* MSA

_____

  * Circuit judge, sitting on the Court of Appeals by assignment.

25.358(11) *et seq.* In a brief opinion accompanying its December 16, 1980, order imposing the requested permanent injunction, the trial court held that this statute did not permit "the licensing of state operated residental child caring facilities". Thus, reasoned the court, a state run (as opposed to state *licensed)* facility could not partake of the benefits of § 16a(2) of the Township Rural Zoning Act, MCL 125.286a(2); MSA 5.2963(16a)(2), which makes "a state *licensed* residential facility" with six or less persons a "residential use" sufficient to meet local zoning restrictions. The defendants appeal as of right and argue that a state operated facility which must be "evaluated and approved" but not licensed, MCL 722.116; MSA 25.358(16), should be included within the zoning act's definition of residential use the same as private licensed facilities.

The dispute herein involves three primary statutes. The first is MCL 722.115(1); MSA 25.358(15)(1) which imposes a licensing requirement on those persons or organizations desirous of opening a child care facility. In pertinent part, the statute provides:

"A person, partnership, firm, corporation, association, or nongovernmental organization shall not establish or maintain a child care organization, unless licensed or registered by the department. Application for a license or certificate of registration shall be made on forms provided, and in the manner prescribed, by the department. Before issuing or renewing a license, the department shall investigate the activities and proposed standards of care of the applicant and shall make an on-site visit of the proposed or established organization. If the department is satisfied as to the need for a child care organization, its financial stability, the good moral character of the applicant, and that the services and facili-

ties are conducive to the welfare of the children, the license shall be issued or renewed."

The correlative requirements for state or local government operated child care centers differ from those imposed on private facilities. Specifically, under MCL 722.116; MSA 25.358(16), a state or local government facility must meet the following basic guidelines:

"Local and state government child care organizations similar to those nongovernmental organizations required to be licensed pursuant to this act shall be *evaluated and approved* at least once every 2 years, using this act and rules promulgated thereunder for similar nongovernmental organizations licensed under this act. A report of the evaluation shall be furnished to the funding body for each child care organization. Unless child care organizations are approved, or provisionally approved, as meeting the appropriate administrative rules, state funds shall not be appropriated for their continued operation." (Emphasis added.)

The "licensed" requirement for private facilities and the "evaluated and approved" standard for local and state government run centers becomes critical in light of the state policy to establish small, noninstitutional facilities in residential areas. Inevitably, as was found, the state policy comes into conflict with local zoning ordinances which limit occupancy in a given area to single-family residences. To remedy this perceived conflict, the Legislature enacted the third statute, MCL 125.286a; MSA 5.2963(16a), which was designed to facilitate residential placement of persons in the state's care, without encroaching on the right of local homeowners to enforce applicable restrictive covenants. See *Malcolm v Shamie,*

95 Mich App 132; 290 NW2d 101 (1980). The statute provides:

"(2) In order to implement the policy of this state that persons in need of community residential care shall not be excluded by zoning from the benefits of normal residential surroundings, *a state licensed residential facility* providing supervision or care, or both, to 6 or less persons shall be considered a residential use of property for the purposes of zoning and a permitted use in all residential zones, including those zoned for single family dwellings, and shall not be subject to a special use or conditional use permit or procedure different from those required for other dwellings of similar density in the same zone." (Emphasis added.)

It is alleged on appeal that evaluation and approval of government run facilities is so similar to the licensing procedure required of private institutions, that the special definition of residential use for "state licensed residential facilit[ies]" applied equally to the instant center. Without guessing whether the state policy equates privately run and government run facilities, we cannot agree.

In *Charter Twp of Pittsfield v City of Saline,* 103 Mich App 99, 104-105; 302 NW2d 608 (1981), we referred to the traditional rules or statutory construction:

"[I]f the statute is unambiguous on its face, we will avoid further interpretation or construction of its terms. *Detroit v Redford Twp,* 253 Mich 453; 235 NW 217 (1931). However, if ambiguity exists, it is our duty to give effect to the intention of the Legislature in enacting the statute. *Melia v Employment Security Comm,* 346 Mich 544; 78 NW2d 273 (1956). To resolve a perceived ambiguity, a court will look to the object of the statute, the evil or mischief which it is designed to remedy, and will apply a reasonable construction which best accomplishes the statute's purpose. *Bennetts v*

*State Employees Retirement Board,* 95 Mich App 616; 291 NW2d 147 (1980), *Stover v Retirement Board of St Clair Shores,* 78 Mich App 409; 260 NW2d 112 (1977). Also, ambiguous statutes will be interpreted as a whole and construed so as to give effect to each provision and to produce an harmonious and consistent result. *In re Petition of State Highway Comm v Miller,* 78 Mich App 336; 259 NW2d 877 (1977). Further, specific words in a given statute will be assigned their ordinary meaning unless a different interpretation is indicated. *Oshtemo Twp v Kalamazoo,* 77 Mich App 33, 39; 257 NW2d 260 (1977), MCL 8.3a; MSA 2.212(1)."

Applying the above rules, we note that the term "license" is not ambiguous on its face. See *People v Henderson,* 391 Mich 612, 616; 218 NW2d 2 (1974). ("A license is the permission by competent authority to do an act which, without such permission, would be illegal.") Further, it is apparent from a comparison of the language in MCL 722.115(1); MSA 25.358(15)(1) and MCL 722.116; MSA 25.358(16) that the effect of acquiring a license to operate a privately run child care center differs substantially from the procurement of state approval for a government run center. In the former case, a license is an absolute prerequisite to operate a child care facility. Although a state or local government run facility is subject to the same rules of operation as its private counterpart, including criminal penalties for failure to comply with such standards, MCL 722.125; MSA 25.358(25), the state's formal approval of the facility does not constitute a similar prerequisite to operation. In fact, the language of MCL 722.116; MSA 25.358(16) discloses that the state's only recourse against unapproved government run facilities, which are not otherwise subject to the criminal penalties noted above, is to withhold state funds. Thus, absent a finding that the statutory

terms "licensed" and "approved" are interchangeable or ambiguous, we are prohibited from further construction of these terms. *Charter Twp of Pittsfield, supra.*

Our ultimate inquiry is whether the phrase "state licensed residential facility" in MCL 125.286a(2); MSA 5.2963(16a)(2) is elastic enough to encompass "licensed" private facilities and "approved" government centers. We conclude that the unambiguous and exclusive reference to licensed facilities in this statute does not permit a conclusion that "approved" government run facilities can be included in the definition of residential use. In this regard, we note that nowhere in the entire statute is the term "approved" or a similar term applied. Subsection 1 of the statute provides the following definition of state licensed residential facility:

"As used in this section 'state licensed residential facility' means a structure constructed for residential purposes that is licensed by the state pursuant to Act No. 287 of the Public Acts of 1972, as amended, being sections 331.681 to 331.694 of the Michigan Compiled Laws, or Act No. 116 of the Public Acts of 1973, as amended, being sections 722.111 to 722.128 of the Michigan Compiled Laws, which provides resident services for 6 or less persons under 24-hour supervision or care for persons in need of that supervision or care."

We have already concluded that a state "approved" child care institution differs from one which acquires a license. This provision's reference to MCL 331.681; MSA 16.610(1) through MCL 331.694; MSA 16.610(14), since repealed, 1979 PA 218, and replaced by the new Adult Foster Care Facility Licensing Act, MCL 400.701 *et seq.;* MSA 16.610(51) *et seq.,* provides further support for a more limited application of the statute's terms.

Under the new act, all institutions, whether governmental or nongovernmental, are required to be licensed by the Department of Social Services. MCL 400.713(1); MSA 16.610(63)(1). Also, the department is directed to operate within the special licensing restrictions imposed by MCL 125.286a; MSA 5.2963(16a) regarding the number of facilities which may be licensed in a specified area and notice of the proposed home to local authorities. MCL 400.716(3); MSA 16.610(66)(3). As evidenced by the more detailed licensing provisions of the Adult Foster Care Facility Licensing Act, the Legislature could have provided for specific licensing of both private and governmental child care institutions. Because the Legislature saw fit not to license government institutions, we are compelled to hold that the definition of residential use in MCL 125.286a(2); MSA 5.2963(16a)(2) applies only to those institutions in fact licensed.

Accordingly, we affirm the decision of the trial court and add that the Legislature is free to redirect this decision by statutory amendment if it believes that our interpretation is contrary to the act's intent.

Affirmed.

R. M. DANIELS, J., concurred.

BRONSON, J. *(dissenting)*. Plaintiffs instituted this action to obtain an injunction restraining defendants from using a particular residential structure as a child caring institution. See MCL 722.111(b); MSA 25.358(11)(b). The trial court granted a permanent injunction in December, 1980. The court held that the child care organizations act[1] did not provide for the licensure of state

---

[1] MCL 722.111 *et seq.;* MSA 25.358(11) *et seq.*

operated residential child caring facilities. Consequently, the court concluded that a state run, as opposed to a state licensed, facility was not eligible for the benefits of the Township Rural Zoning Act[2] which makes a state licensed child caring facility, providing care for six or less persons, a residential user eligible for operation in locally zoned residential areas. See MCL 125.286a(2); MSA 5.2963(16a)(2). Defendants appeal this determination as of right. The sole issue on appeal is whether an "evaluated and approved" state run child caring facility, which need not be licensed pursuant to the child care organizations act, MCL 722.116; MSA 25.358(16), is eligible to claim the benefit of the Township Rural Zoning Act's definition of residential use.

Resolution of the problem at hand requires us to determine the relationship between various statutory provisions. The first of these provisions, MCL 722.115(1); MSA 25.358(15)(1), requires that any nongovernmental entity operating a child care organization be licensed or registered by the Department of Social Services (DSS). Comparable child care facilities run by local or state units of government need only be "evaluated and approved" by DSS to legally operate. MCL 722.116; MSA 25.358(16). It must be noted, however, that this evaluation and approval is to be extended in accordance with the very same statutory provisions and rules governing the licensure of nongovernmental child caring facilities.

The preeminent duty of any court construing legislation is to ascertain and effectuate the will of the Legislature. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956), *Avon Twp v State Boundary Comm,* 96 Mich App

---

[2] MCL 125.271 *et seq.;* MSA 5.2963(1) *et seq.*

736, 743; 293 NW2d 691 (1980). All other rules of construction are applied only to fulfill this foremost obligation. In this case, as will be developed below, I believe that application of the principle that a statute is to be construed in such a way that every word of it is rendered effective and no part of it is left without meaning,[3] in conjunction with the rule of reason, leads to the conclusion that the permanent injunction entered by the lower court must be dissolved.

The child care organizations act states:

" 'Licensee' means a person, partnership, firm, corporation, association, nongovernmental, or local or state government child care organization, which has been issued a license to operate a child care organization." MCL 722.111(g); MSA 25.358(11)(g).

While at first glance this definition seems straightforward, closer scrutiny reveals an ambiguity. The definition of licensee explicitly includes local or state government child care organizations which have been issued a license. However, as the lower court noted, nothing in the child care organizations act provides for the licensure of governmentally operated child care facilities. Consequently, the inclusion of "local or state government child care organization" within the definition of "licensee" is rendered meaningless if we construe MCL 722.111(g); MSA 25.358(11)(g) literally. I cannot accept that the Legislature meant nothing by this language which is made ineffective by the majority's decision to uphold the lower court.

As noted previously, privately run licensed facilities and governmentally evaluated and approved facilities are subject to the same statutory provi-

[3] *Melia, supra, Deshler v Grigg,* 90 Mich App 49, 53-54; 282 NW2d 237 (1979), *lv den* 407 Mich 875 (1979).

sions and rules concerning their mode of operation. The only important distinction between governmental and private facilities is that a governmentally run facility need not have the approval of the DSS to lawfully operate. However, if this approval is not obtained, no state funds can be appropriated for the continued operation of the facility. At least insofar as a state run facility is concerned, the effect of a lack of approval is identical to denial or revocation of a license in respect to a privately run child care organization. As a practical matter, it is inherently unlikely that a local unit of government would operate a child care facility if it could not receive monies from the state. Thus, to the extent that the majority considers it significant that, theoretically, a government child care facility could exist without adhering to the requirements imposed by the child care organizations act, I disagree that this tends to show an intent on the part of the Legislature to preclude governmentally run facilities from claiming the benefits of MCL 125.286(a)(2); MSA 5.2963(16a)(2). Moreover, as the majority notes, a governmentally run facility is subject to the same criminal penalties as a privately run child care home for failure to comply with the standards mandated by the act or rules promulgated pursuant thereto.

An examination of the child care organizations act discloses no significant distinctions between privately and governmentally operated child care facilities which would provide any plausible reason by giving private facilities the benefits of MCL 125.286(a)(2); MSA 5.2963(16a)(2) but not governmentally run facilities. In light of the ambiguity in the act's definition of "licensee", and in view of the fact that the important state policy stated in MCL 125.286a(2); MSA 5.2963(16a)(2) would be affirma-

tively hindered by not extending its benefits to governmentally run child care facilities, it is impossible for me to believe that the Legislature intended to preclude such facilities from taking advantage of § 16a of the Township Rural Zoning Act. In my opinion, the contrary conclusion, although arguably supportable by applying different rules of construction than I have, constitutes an absurd result. The Michigan Supreme Court has held that departure from literally applying the words of a statute is justified where such a literal construction would produce a result manifestly inconsistent with the policies sought to be effected by the statutory provisions in dispute. *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976), and cases cited therein. Furthermore, in this case, unlike *Salas,* it is outright impossible to literally apply the whole of the language of the various statutory provisions in question. My result requires us to give a more expansive definition to "licensee" than is justified by its dictionary meaning, but the majority's result requires it to ignore words appearing in the statutory definition of "licensee".

The majority states "that the term license is not ambiguous on its face". It then applies the rule that specific words in a statute take their ordinary meaning and concludes by stating that no construction is permissible extending to state run child care facilities the benefits of MCL 125.286a(2); MSA 5.2963(16a)(2).

I believe this approach is faulty because, by enacting MCL 125.286a(1); MSA 5.2963(16a)(1), the Legislature specifically defined "state licensed residential facility" by reference to the child care organizations act. As noted above, the Legislature's chosen definition of "licensee", as used in

the child care organizations act, is at odds with the plain meaning of license unless one ignores the language in that definition referring to "local or state government child care organization". Consequently, contrary to the majority's view, the statutes in issue here are not so clear that statutory construction is unneeded. Indeed, an ambiguity is obvious.

I also find the majority's reliance on the new Adult Foster Care Facility Licensing Act, MCL 400.701 *et seq.;* MSA 16.610(51) *et seq.,* unpersuasive. The majority's underlying assumption that the Legislature's intention in 1976, when it enacted the amendment to the Township Rural Zoning Act embodied in MCL 125.286a(2); MSA 5.2963(16a)(2), can be ascertained by reference to a different type of legislation passed in 1979, strikes me as a questionable proposition. In any case, the old Adult Foster Care Facility Licensing Act, MCL 331.681 *et seq.;* MSA 16.610(1) *et seq.,* did not embody the same dichotomy between governmental and nongovernmental facilities evident in the child care organizations act. Instead, the old merely required licensure as a prerequisite to "a person, firm, corporation, association or organization" operating an adult foster care facility. This requirement certainly did not preclude the licensure of governmentally operated adult foster care homes. Indeed, a literal reading of the old statute would indicate that the licensure of each adult foster care home was a condition precedent to its lawful operation without regard to the organization running it. Thus, to the extent that the Adult Foster Care Facility Licensing Act can be said to have any bearing on legislative intent in enacting MCL 125.286a(2); MSA 5.2963(16a)(2), the new act has no more materiality to this problem than the old act.

I believe that the history of legislative changes made to MCL 722.111; MSA 25.358(11), the definitional section of the child care organizations act, is far more germane to resolution of this case than revisions to the Adult Foster Care Facility Licensing Act. By 1980 PA 232, a definition of "licensee" was first included in the act. This definition is the one currently found in MCL 722.111(g); MSA 25.358(11)(g). Other amendments to the child care organizations act were made contemporaneously with enactment of the definition of "licensee". However, these other amendments were not of such a nature that they required an explicit definition of "licensee" to be understood. Although speculative, and of less importance to my holding than the rule of reason and the principle that every word used in a statute should be given effect, I believe it probable that somebody became concerned about the interplay between the child care organizations act and the Township Rural Zoning Act and believed that by enacting the definition of "licensee" currently embodied in MCL 722.111(g); MSA 25.358(11)(b) this problem would be solved.

I would reverse. I urge the defendants to seek leave to appeal before the Michigan Supreme Court.